IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 2, 2012 Session

**SIDNEY S. STANTON III v. STATE OF TENNESSEE**

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Warren County
No. M-12220        E. Shayne Sexton, Judge**

**No. M2010-01868-SC-R11-CD - Filed January 23, 2013**

The defendant was indicted on sixteen counts of animal cruelty for intentionally or knowingly failing to provide necessary food and care to horses on his farm in Warren County.  The defendant applied for pretrial diversion, but the assistant district attorney general, acting for the district attorney general, determined that the defendant was not an appropriate candidate for pretrial diversion.  The defendant filed a petition for writ of certiorari seeking a review by the trial court.  The trial court found no abuse of discretion. The Court of Criminal Appeals affirmed. We granted the defendant's application for permission to appeal.  Finding no abuse of discretion, we affirm.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal
Appeals Affirmed**

SHARON G. LEE, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., JANICE M. HOLDER, CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined.

Christopher Brent Keeton, Manchester, Tennessee, for the appellant, Sidney S. Stanton III.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Brent C. Cherry, Senior Counsel; Lisa S. Zavogiannis, District Attorney General; and Joshua T. Crain, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Facts and Procedural History

On September 11, 2009, Sidney S. Stanton III was indicted on sixteen counts of animal cruelty, a class A misdemeanor. The indictments alleged that he had intentionally or knowingly failed unreasonably to provide necessary food, water, care, or shelter for certain specified horses in his custody in violation of Tennessee Code Annotated section 39-14-202(a)(2) (2006). Stanton pleaded not guilty and filed an application for pretrial diversion pursuant to Tennessee Code Annotated section 40-15-105(a)(1)(A) (2006). In his application, Stanton stated that he was fifty-five years old, married with no children, and a college graduate. He had no prior criminal convictions, had been self-employed as an oil distributor since 1978, and was a long-time member of the Warren County Saddle Club. Stanton provided the following factual explanation:

> A lot of the horses that are were [sic] my property were in an ill state when I received them. I tried to nurse and care for the horses, some of whom were old, back to health. I received the horses and took care of them when others would not take care of them. In several cases, the only alternatives would have been that the prior owners of the horses would have had to shoot them or euthanize them. I did not take care of these horses for money or recognition. I actually lost money by having to spend money to take care of these horses. I took horses in because of my love for the horses.

Twenty-one letters of support are attached to the application, extolling Stanton's good character and describing him as a person who has concern for the welfare of animals.

In a six-part written response, the assistant district attorney general denied the application and enumerated the reasons for his decision that Stanton was not an appropriate candidate for pretrial diversion. First, the assistant district attorney general set forth the facts on which he relied. On July 15, 2009, after receiving notification that there were dead horses on Stanton's farm on Bluff Springs Road in Warren County, the Tennessee Department of Agriculture (TDA) sent TDA Investigator Marshall Lafever to the farm. After discovering two dead horses on the farm, Lafever instructed Stanton to bury the horses and advised him that he would be checking back to ensure that the horses had been buried.

When Lafever returned to the farm the next day, he found that instead of being buried, the horses had been moved to the back part of the farm. He also saw that two more horses

were down and that several more horses appeared to be in very poor health. Lafever contacted a TDA veterinarian and the Warren County Sheriff's Department. A Sheriff's Department investigator came to the farm and, upon observing horses in poor condition, secured a search warrant for the farm. The search warrant, executed later that same day, revealed the decomposed remains of two dead horses in the field and two horses that were so ill they had to be euthanized. Between forty-seven and fifty-two horses were found on the sixty-five acre farm, twelve of which had a Body Condition Score ("BCS") of one or two with the lowest possible score being one. Warren Barry of the Warren County Extension office concluded that the horses' neglect was caused by overpopulation and lack of adequate forage and feed.

Melvin Lee Lazzara, who had worked for Stanton on the farm from September 2006 through March 29, 2009, was questioned. Lazzara told investigators that during the time he worked on the farm, he had fed the horses three bags of feed per day and that three or four horses had died on Stanton's home farm. After quitting in March, he had only returned to Stanton's Bluff Springs Road farm on two occasions; once during the week of July 5, 2009, to put out three bags of food and once on July 15, 2009, to pull off two dead horses. Lazzara did not know who had fed the horses after he quit in March 2009. He noted that when he fed the horses, the more aggressive horses would eat and fight off the other horses who were attempting to access the feed.

On July 16, 2009, Stanton was allowed back on the farm with a backhoe to bury six dead horses. On the same evening, an animal rescue group arrived with a load of hay that was spread for the remaining horses. Stanton allowed investigators to have continued access to his farm on Bluff Springs Road and his home farm. While at Stanton's home farm, investigators saw numerous dogs tied to farm implements and in dog runs. Many horses were found on Stanton's home farm, some of which were in the same or worse condition as the horses on the Bluff Springs Road farm. On July 18, 2009, Stanton surrendered sixteen horses from the Bluff Springs Road farm and seven horses from his home farm. Later, he surrendered three more horses from his home farm. Stanton met with a representative of the Humane Society of the United States ("Humane Society") and discussed surrendering more horses and his dogs but decided not to participate. The Humane Society representative also found a source of horse feed that Stanton could buy at cost and twenty-five bales of hay, but he refused the offer. A veterinarian examined the twenty-six horses surrendered by Stanton and determined that they had a BCS of two or less. All were found to have an extremely heavy parasite load; two had to be euthanized and one died.

After describing in detail the circumstances giving rise to the charges against Stanton, the assistant district attorney general discussed various factors he considered in arriving at his decision to deny the application for pretrial diversion. Under "Defendant's Social History

and Health," the response recited facts related to Stanton's background and stated that "significant weight was given to Stanton's lack of criminal history and positive educational background." The assistant district attorney general also noted that Stanton's references and letters of support described him as "an honest and trustworthy individual and one who cared deeply for animals." The response, however, was mostly unfavorable to Stanton. It noted that in 2007, ExxonMobil Oil Corporation ("ExxonMobil") filed a lawsuit against Stanton's oil company alleging that after the company's franchise agreement with ExxonMobil ended, Stanton did not sell genuine Exxon fuel but deliberately set out to deceive consumers into believing it was affiliated with ExxonMobil. An agreed judgment, signed by Stanton, was entered in the amount of $250,000. The response also noted that Stanton has received multiple letters from the Tennessee Department of Environment and Conservation ("TDEC") related to his failure to comply with underground storage tank regulations and that he had incurred over $50,000 in civil penalties as a result of his non-compliance.

Under the "Amenable to Correction" section, the assistant district attorney general stated that Stanton had "routinely displayed an unwillingness to abide by rules and regulations until he is forced to, and sometimes not even then." To support his decision that Stanton was not amenable to correction, the assistant district attorney general referenced Stanton's disputes with ExxonMobil and TDEC and his failure to bury the dead horses on his property as instructed until he was threatened with arrest. The response also noted that because Stanton had not accepted responsibility for the dead horses and blames others, he was likely to be a repeat offender.

Under the "Interests of the Public and Defendant" section, the assistant district attorney general concluded that pretrial diversion would not be in the public's best interest. The response noted a correlation between public sentiment and the legislature's enactment of Tennessee Code Annotated section 39-14-202, which provides that a person who "fails unreasonably to provide necessary food, water, care or shelter for an animal in the person's custody" should face punishment. The response cited to proposed legislation to amend the statute penalizing aggravated cruelty to companion animals, to all animals. Addressing Stanton's interest in not being granted pretrial diversion, the response noted that Stanton was unwilling to surrender his remaining animals and that if he is not held accountable for his animal care practices, "he will find himself again facing troubles."

In the next section, captioned "Deterrent Effect," the assistant district attorney general asserted a correlation between animal abuse and crimes against humans and found that granting diversion would send a message that the harmful treatment of animals will not be "scrutinized." The assistant district attorney general also noted that Stanton's "refusal to admit any wrongdoing negates the concept of deterrence" and that "[i]t is impossible to deter behavior in another when that person sees nothing wrong with their [sic] actions."

-4-

Finally, under the "Serving the Ends of Justice" section, the assistant district attorney general concluded that granting pretrial diversion would not serve the ends of justice. He noted that Stanton "has maintained his actual innocence and refuses to acknowledge any wrongdoing, choosing instead to blame others for his troubles and vicariously calling into question the motivation of those seeking to perform the law." The assistant district attorney general stated he "places great weight on this factor and submits that the ends of justice cannot be achieved when the Defendant steadfastly refuses to accept responsibility for his actions, shows no contrition, and instead relies solely upon his reputation in an effort to obtain favorable treatment."

In conclusion, the assistant district attorney general stated that he had considered all the positive and negative factors and concluded that the factors against granting pretrial diversion outweighed those in favor of granting pretrial diversion.

Upon the denial of his application for pretrial diversion, Stanton petitioned the Warren County Circuit Court for a writ of certiorari upon grounds that the assistant district attorney general had abused his discretion in denying the application by basing his denial on irrelevant factors, failing to consider relevant factors favorable to Stanton, and failing to assign weight to evidence that was submitted. The trial court, after reviewing the pleadings and hearing argument of counsel, denied the petition, finding that the assistant district attorney general did not abuse his discretion. On interlocutory appeal, the Court of Criminal Appeals found no abuse of prosecutorial discretion and affirmed the judgment of the trial court. *State v. Stanton*, No. M2010-01868-CCA-R9-CD, 2012 WL 76906, at *7 (Tenn. Crim. App. Jan. 10, 2012). Thereafter, we granted Stanton's application for permission to appeal. After careful review, we agree with the Court of Criminal Appeals that the assistant district attorney general did not abuse his discretion in denying Stanton's application for pretrial diversion and that the trial court did not err in denying Stanton's petition for writ of certiorari.

## II. Analysis

The primary issue we address is whether the assistant district attorney general abused his discretion in denying Stanton's application for pretrial diversion. Stanton argues that the assistant district attorney general abused his discretion by 1) giving undue consideration to an irrelevant factor, 2) failing to consider all relevant factors in Stanton's favor, and 3) failing to state exactly what weight was assigned to each piece of evidence submitted in the case.

Stanton applied for pretrial diversion pursuant to Tennessee Code Annotated section 40-15-105(a)(1)(A) (2006). Because Stanton was charged with a class A misdemeanor, he was eligible for pretrial diversion. At the time of his application, a defendant was allowed to seek pretrial diversion for any offense other than a Class A or Class B felony, certain Class

C felonies, a sexual offense, driving under the influence, or vehicular assault. *See id.* § 40-15-105(a)(1)(B)(i)(c).[1]

To qualify for pretrial diversion, the applicant must not have had a disqualifying conviction or previously been granted pretrial diversion for another offense. *See id.* § 40-15-105(a)(1)(B)(i)(a); *see also State v. Bell*, 69 S.W.3d 171, 176 (Tenn. 2002). Stanton did not have a disqualifying conviction or a previous pretrial diversion.

Eligibility for pretrial diversion, however, does not give rise to a presumption of entitlement to pretrial diversion. *State v. McKim*, 215 S.W.3d 781, 786 (Tenn. 2007) (citing *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999)). Rather, pretrial diversion is "extraordinary relief," *State v. Poplar*, 612 S.W.2d 498, 501 (Tenn. Crim. App. 1980) (*overruled in part by State v. Nease*, 713 S.W.2d 90, 92 (Tenn. Crim. App. 1986)), within the exclusive discretion of the prosecuting attorney. *Bell*, 69 S.W.3d at 176 (citing *Curry*, 988 S.W.2d at 157, and *State v. Pinkham*, 955 S.W.2d 956, 959 (Tenn. 1997)). In exercising his or her discretion, the district attorney general must "focus[] on a defendant's amenability for correction and . . . consider[] all of the relevant factors, including evidence that is favorable to a defendant." *Bell*, 69 S.W.3d at 178. Objective factors that the district attorney general is required to consider include the circumstances of the offense; the defendant's amenability to correction; any factors that tend to accurately reflect whether the defendant will become a repeat offender; the defendant's criminal record, social history, and physical and mental condition; the need for general deterrence; and "the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant." *State v. Richardson*, 357 S.W.3d 620, 626 (Tenn. 2012); *State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn. 1983). While each of these factors should be considered, the circumstances of the offense and the need for deterrence "cannot be given *controlling* weight unless they are of such overwhelming significance that they [necessarily] outweigh all other factors." *McKim*, 215 S.W.3d at 787 (alteration in original) (quoting *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993) (internal quotation marks omitted)).

If diversion is granted, a qualified offender may enter into a memorandum of understanding with a district attorney suspending prosecution for a maximum of two years. Tenn. Code Ann. § 40-15-105(a)(1)(A). If the terms of the memorandum are adhered to, at the end of the suspension period all pending charges must be dismissed with prejudice.

---

[1] As amended in 2012, the statute now provides that pretrial diversion is also unavailable to a defendant if the charged offense is "[a]ny misdemeanor offense committed by any elected or appointed person in the executive, legislative or judicial branch of the state or any political subdivision of the state, which offense was committed in the person's official capacity or involved the duties of the person's office." Tenn. Code Ann. § 40-15-105(a)(1)(B)(iii)(*f*) (2012).

*Id.* § 40-15-105(e). "The self-evident purpose of pre-trial diversion is to spare appropriately selected first offenders the stigma, embarrassment and expense of trial and the collateral consequences of a criminal conviction." *Pace v. State*, 566 S.W.2d 861, 868 (Tenn. 1978).

If the district attorney general denies the application, the denial must be in writing and must enumerate the factors considered with a factual basis provided for each factor and the weight accorded to each factor. *Richardson*, 357 S.W.3d at 626. If there are any disputes between the evidence relied upon by the district attorney general and the application filed by the defendant, the denial must identify the issues. *Id.* A defendant may obtain review of a denial of pretrial diversion by petitioning the trial court for a writ of certiorari for abuse of prosecutorial discretion. Tenn. Code Ann. § 40-15-105(b)(3). The standard governing the trial court's review requires that it presume that the prosecuting attorney's decision was correct. *Richardson*, 357 S.W.3d at 627. The trial court is limited to examining the evidence considered by the district attorney general. *Bell*, 69 S.W.3d at 177. The trial court may conduct a hearing only to resolve factual disputes raised by the district attorney general or the defendant; otherwise, it is limited solely to the evidence expressly considered by the district attorney general as reflected in the statement of denial. *Curry*, 988 S.W.2d at 158. The prosecuting attorney is not required to introduce all the evidence that was relied on in denying diversion but is "simply required to identify the factual basis and rationale for the decision." *Pinkham*, 955 S.W.2d at 960. If there is no dispute as to the factual basis for the decision, the trial court may dispense with an evidentiary hearing and consider the matter on the basis of the indictment, the defendant's application for pretrial diversion, and the prosecuting attorney's response to the application. *Id.* In reviewing the decision, the proper focus is not on the intrinsic correctness of the prosecuting attorney's decision, but rather on "the methodology employed." *Richardson*, 357 S.W.3d at 627; *McKim*, 215 S.W.3d at 788. The trial court cannot re-weigh the evidence or substitute its own judgment for that of the district attorney general. *Richardson*, 357 S.W.3d at 627.

A prosecuting attorney abuses his or her discretion by failing to consider and articulate all relevant factors, by considering and unduly relying upon an irrelevant factor, or by making a decision that is unsupported by substantial evidence. *Id.* If the reviewing court determines that the prosecuting attorney has abused his or her discretion for either of the first two reasons, the court must vacate the denial and remand the matter to the prosecuting attorney for further consideration of the application based on a proper assessment of all the relevant factors. *Id.* If the denial was based on proper consideration of appropriate factors and not on undue consideration of an irrelevant factor, but not supported by substantial evidence, the

reviewing court may order that the defendant be placed on pretrial diversion and remand is unnecessary. *Id.*[2]

We begin by addressing Stanton's argument that the assistant district attorney general abused his discretion in denying Stanton's application for pretrial diversion by considering the following irrelevant evidence: 1) Stanton's failure to accept responsibility for his actions; 2) a civil judgment and civil violations related to Stanton's oil distributorship business; 3) proposed legislation to amend Tennessee Code Annotated section 39-14-202 to broaden aggravated cruelty to apply to all animals, including horses; and 4) Stanton's failure to surrender horses in his possession after it had been determined that there was probable cause to believe that he had violated the animal cruelty statute. The basis of Stanton's argument is that none of this evidence had "[a]ny tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. We disagree and hold that each of these factors was either relevant to the assistant district attorney general's decision or, if irrelevant, was not given undue consideration.

Stanton first contends that the assistant district attorney general improperly considered his unwillingness to admit any wrongdoing. In response to Stanton's application for pretrial diversion, the assistant district attorney general made various references to Stanton's failure to admit that he has done anything wrong, showing that this was a significant consideration in the assistant district attorney general's decision. First, in considering Stanton's amenability to correction, the response stated that

---

[2] Throughout *Richardson*, we indicated that the critical questions on appellate review are whether in denying an application for pretrial diversion, a district attorney general has failed to consider all relevant factors or has given "*undue* consideration" to an irrelevant factor. *Richardson*, 357 S.W.3d at 627. We also stated that vacation of the denial is appropriate if the district attorney general "has considered an irrelevant factor." *Id.* (citing *McKim*, 215 S.W.3d at 788). Although this latter language might be wrongly construed to mean that the mere consideration of an irrelevant factor will warrant a finding of abuse of discretion, on the contrary, it is the *undue* consideration of an irrelevant factor that is prohibited. Thus, in *McKim*, where we found abuse of discretion where a prosecutor denied diversion to a defendant indicted for negligent homicide based in part on the prosecutor's irrelevant opinion that the availability of diversion in a negligent homicide case was an "aberration of the law," *McKim*, 215 S.W.3d at 785, we stated that the prosecutor's emphasis upon that irrelevant factor "*so tainted* his decision-making process as to constitute an abuse of discretion." *Id.* at 788 (emphasis added). We noted that "[t]he tone of the assistant district attorney general's written denial suggests that he will not grant pretrial diversion to *any* defendant charged with criminally negligent homicide, regardless of the defendant's personal circumstances and amenability to correction." *Id.* Thus, it was the prosecutor's *undue* reliance on his own opinion that constituted an abuse of discretion.

[a]fter execution of the criminal search warrant and the subsequent criminal investigation and indictment, the Defendant has maintained and vocalized to others that he has done nothing wrong and that he is simply being picked on. . . . Because the Defendant sees no wrongdoing on his behalf any efforts to ameliorate his behavior or attitude will be moot.

In considering the public interest, the assistant district attorney general's response further stated that "[t]he interests of the public will be better served if the Defendant accepts responsibility for his actions and is held accountable, rather than be granted pre-trial diversion with no admission as to wrongdoing and no avenue to prevent further problems." Next, in considering the matter of deterrence, the assistant district attorney general's response stated that "the defendant's refusal to admit any wrongdoing negates the concept of deterrence. It is impossible to deter behavior in another when that person sees nothing wrong with their [sic] actions. Granting pre-trial diversion would support that contention." Lastly, in concluding that granting Stanton pretrial diversion would not serve the ends of justice, the assistant district attorney general's response stated as follows:

> [t]o date, the Defendant has maintained his actual innocence and refuses to acknowledge any wrongdoing, choosing instead to blame others for his troubles and vicariously calling into question the motivation of those seeking to enforce the law . . . . [A] grant of pre-trial diversion in this case, without any acknowledgment of wrongdoing or any mechanism in place to prevent future troubles relating to numerous animals in his possession would be tantamount to a dismissal. . . . The State places great weight upon this factor and submits that the ends of justice cannot be achieved when the Defendant steadfastly refuses to accept responsibility for his actions, shows no contrition, and instead relies solely upon his reputation in an effort to obtain favored treatment.

Stanton contends that it is irrelevant that he is unwilling to admit any wrongdoing or to accept responsibility for his actions and, therefore, the assistant district attorney general abused his discretion. We agree with Stanton that he was not required to admit his guilt to the animal cruelty charges in order to be granted pretrial diversion. Neither our pretrial diversion statute nor previous case decisions require an admission of guilt. *State v. Oakes*, 269 S.W.3d 574, 578 (Tenn. Crim. App. 2006) ("[T]he failure of the defendant to admit guilt is not, in and of itself, a proper basis for denying diversion."); *State v. Thompson*, 189 S.W.3d 260, 268 (Tenn. Crim. App. 2005) (finding that prosecutor abused his discretion in

requiring an admission of guilt as a prerequisite to pretrial diversion); *State v. Lane*, 56 S.W.3d 20, 29 (Tenn. Crim. App. 2000) (holding that pretrial diversion was improperly denied where district attorney general "essentially required that defendant admit guilt" of crimes charged and express regret); *State v. King*, 640 S.W.2d 30, 33 (Tenn. Crim. App. 1982) ("To require a plea of guilty prior to placement of a defendant on pre-trial diversion would amount to supplanting [the pretrial diversion] program with probation, and would totally defeat the legislative purpose of these statutes."), *abrogation on other grounds recognized by State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn. 1983), *as recognized by State v. Sutton*, 668 S.W.2d 678, 680 (Tenn. Crim. App. 1984).

However, there is a critical distinction between confessing guilt to a crime and accepting responsibility for wrongful conduct. Admitting that one's conduct complies with the elements of a criminal offense and accepting responsibility for wrongful conduct are not necessarily synonymous. "Wrong" is defined as "not in accordance with an established standard" or "not suitable or appropriate." *Webster's New World Dictionary of the American Language, College Edition* 1688 (1966). A defendant may admit and assume responsibility for wrongdoing without admitting that he or she has committed a crime. In this case, Stanton was not required to admit that he violated Tennessee Code Annotated section 39-14-202 by "intentionally or knowingly fail[ing] unreasonably to provide necessary food, water, care, or shelter" for the horses in his care, but his failure to admit any wrongdoing or to accept any responsibility for his actions was a relevant consideration in determining his qualification for pretrial diversion.

This Court has not directly addressed the issue of whether a defendant's failure to take responsibility for his or her conduct may properly serve as a basis for denying pretrial diversion. In *Bell*, where the defendant was denied pretrial diversion after being charged with vehicular homicide, we implicitly approved consideration of this fact. In *Bell*, we held that a district attorney general's failure to consider certain evidence in favor of the defendant was an abuse of discretion, 69 S.W.3d at 180, but we noted that the district attorney general properly relied on the defendant's failure to take responsibility for his actions:

> The district attorney general denied pretrial diversion because [the defendant] *failed to take responsibility for his actions*, has a record of traffic offenses, acted recklessly, endangered persons other than the victims, and has an unstable work history. The district attorney general also cited a need to deter irresponsible driving by tractor-trailer drivers. The district attorney general, *however*, failed to consider evidence favorable to [the defendant], such as his honorable discharge from the United

-10-

States Army, stable marriage of thirteen years, high school diploma, and lack of a history of drug or alcohol abuse.

*Id.* at 177 (emphasis added). This language implies that the district attorney general considered facts that would have properly supported denial of pretrial diversion, including the defendant's failure to assume responsibility for his actions; however, by failing to consider evidence in the defendant's favor, the district attorney general abused his discretion. More directly, in *State v. Nease*, 713 S.W.2d 90 (Tenn. Crim. App. 1986), the Court of Criminal Appeals specifically approved the district attorney general's denial of pretrial diversion on the basis of the defendant's failure to accept responsibility for his conduct after being indicted for going armed and shooting into an occupied apartment. The Court of Criminal Appeals stated that the defendant's "failure to be completely truthful about what happened and to accept full responsibility for it makes him, in fact, a poor candidate [for pretrial diversion.]" *Id.* at 91.

In sum, a defendant's unwillingness to admit wrongdoing and assume responsibility for his or her actions is relevant in assessing a defendant's amenability to correction and whether pretrial diversion will satisfy the need for deterrence and serve the ends of justice.[3]

Next, Stanton contends that evidence of a civil judgment and civil violations pertaining to his oil distributorship business were irrelevant and should not have been considered in determining his eligibility for pretrial diversion. The assistant district attorney general relied on a lawsuit filed on January 26, 2007, by ExxonMobil in the United States District Court for the Eastern District of Tennessee against Stanton Oil Company, Inc. ("Stanton Oil"), a corporation of which Stanton was president. ExxonMobil's complaint alleged that after termination of a franchise agreement between the parties, Stanton Oil continued to use ExxonMobil's proprietary marks at its stations[4] without ExxonMobil's permission with the intent to deceive consumers into believing that Stanton Oil was still affiliated with ExxonMobil. Less than one month after the suit was filed, Stanton entered

---

[3] In addition to pretrial diversion, Tennessee's alternative sentencing scheme allows trial courts to grant judicial diversion to qualified defendants. *See* Tenn. Code Ann. § 40-35-313. A principal distinction between the two forms of diversion is that a defendant must be found or plead guilty before qualifying for judicial diversion, *id.* § 40-35-313(a)(1)(B)(i)(*a*), whereas a defendant who maintains his or her innocence may still qualify for pretrial diversion. Because the General Assembly has specifically declined to condition pretrial diversion upon an admission of guilt, courts should carefully review pretrial diversion applications in light of the circumstances of each case to ensure that the acceptance of responsibility does not amount to a requirement of admitting guilt.

[4] The final judgment shows that at the time Stanton Oil operated four stations in McMinnville designated Stanton Exxon, Pit Stop East, Pit Stop North, and Pit Stop South.

into an agreed judgment on behalf of Stanton Oil agreeing that Stanton Oil's "acts have been malicious, fraudulent, deliberate, willful, intentional, and in bad faith, with full knowledge and conscious disregard of ExxonMobil's rights." The judgment awarded ExxonMobil $250,000 "as disgorgement of the profits from its infringing acts and breach of contract, rectification of its unjust enrichment, and compensation to ExxonMobil for its actual damages and attorney's fees." Although Stanton states that evidence of this civil action is irrelevant, he presents no argument or supporting authority for this assertion. Instead, he contends that the judgment came about because ExxonMobil, "the billion dollar giant," placed requirements on Stanton that he was financially unable to satisfy. This explanation is unsupported by the record and is contradicted by the judgment in which Stanton agreed that the suit was prompted by Stanton Oil's unauthorized use of ExxonMobil's proprietary marks. The assistant district attorney general's response to the application for pretrial diversion correctly indicated that Stanton's interaction with ExxonMobil[5] is relevant in that it displays a lack of respect for rules, regulations, and laws and reflects negatively on Stanton's amenability to correction.

Stanton also argues that the assistant district attorney general improperly considered evidence that he violated Tennessee Department of Environment and Conservation ("TDEC") regulations. The assistant district attorney general relied on Stanton's failure to comply with Tennessee petroleum underground storage tank regulations and that TDEC has, from the mid-1990's to the present, issued to Stanton numerous "Notice of Violation" letters followed by "Enforcement Action Notice" letters. Because of Stanton's persistent failure to follow TDEC's regulations, between February 2009 and February 2010, he incurred civil penalties in the amount of $50,650. The assistant district attorney general considered an affidavit signed by the manager of TDEC's underground storage tanks division, reiterating that Stanton has a record of failing to cooperate with TDEC and concluding that Stanton "willingly refuses to follow the rules and regulations" of TDEC and "is not amenable to correction." While Stanton asserts that evidence of his failure to comply with the civil regulations of TDEC is irrelevant to an application for pretrial diversion in a criminal case, he fails to present an argument or authority in support of this assertion. Stanton's interaction with TDEC is relevant in that it, too, displays a lack of respect for rules, regulations, and laws, reflects negatively on his amenability to correction, and was, therefore, properly

---

[5] The judgment with ExxonMobil is against Stanton Oil, a legal corporate entity separate from Stanton. Although Stanton could have taken issue with the assistant district attorney general's reliance on the ExxonMobil judgment by presenting evidence separating himself from the corporation and showing that the corporation's conduct should not be imputed to him as president under the circumstances, he did not, and in the absence of objection or proof to the contrary, the assistant district attorney general did not abuse his discretion by considering the ExxonMobil judgment.

considered by the assistant district attorney general in determining whether Stanton should be granted pretrial diversion.

Stanton further asserts that evidence of proposed legislation to amend Tennessee Code Annotated section 39-14-212, which penalizes aggravated cruelty to companion animals, to make it applicable to all animals, including horses, was irrelevant. The assistant district attorney general considered this proposed legislation to be indicative of public sentiment with respect to the protection of horses. We agree with Stanton that consideration of proposed legislation to expand the aggravated cruelty statute was irrelevant. The proposed amendment was not adopted by the legislature, and the mere introduction of a bill is not of itself indicative of public support. It is, therefore, not relevant in assessing whether the public would favor lenient treatment such as pretrial diversion in a case such as this one. However, because the assistant district attorney general did not give undue consideration to this evidence, we find no abuse of discretion in his consideration of it.

Finally, Stanton contends that the assistant district attorney general abused his discretion by placing weight on the fact that Stanton refused to surrender all of the horses in his possession. The assistant district attorney general noted that a director of the Humane Society advised Stanton that the Humane Society would accept as many horses as Stanton was willing to surrender but that he ultimately declined this offer. Stanton argues that he refused to surrender additional horses because some of the horses that he had already surrendered were euthanized despite an understanding that they would not be. Stanton also notes there was no finding of probable cause that the animal cruelty statute had been violated with respect to many horses on his property. This argument fails because there is no indication that this was a fact considered by the assistant district attorney general and even if it had been, the assistant district attorney general did not give undue consideration to Stanton's refusal to surrender all of his horses.

The next issue we address is whether the assistant district attorney general erred by failing to consider all relevant evidence. In deciding whether a defendant is an appropriate candidate for pretrial diversion, "the district attorney general has a duty to exercise his or her discretion by focusing on a defendant's amenability for correction and by considering all of the relevant factors, *including evidence that is favorable to a defendant*." *Bell*, 69 S.W.3d at 178 (emphasis added). A decision must be reversed when a district attorney general denies pretrial diversion "without considering and weighing substantial evidence favorable to a defendant." *Id.* at 179. "Substantial evidence" is "such pertinent or relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schlickling v. Ga. Conference Ass'n Seventh-Day Adventists*, 355 S.W.2d 469, 499 (Tenn. Ct. App. 1962). Stanton argues that the assistant district attorney general abused his discretion by failing to consider three matters in evidence that favored Stanton.

First, Stanton asserts that the assistant district attorney general failed to consider Investigator Barry's report concluding that a wooded area of the Bluff Springs farm provided the horses with adequate shelter and that a freshwater spring on the property provided the horses with adequate water. These facts, however, do nothing to offset the report's conclusion that Stanton's neglect of his horses resulted from overpopulation and a lack of adequate forage and feed. It is not evidence that a reasonable mind might accept as adequate to support the conclusion that under the circumstances, Stanton would qualify as a candidate for pretrial diversion.

Next, Stanton contends that the assistant district attorney general should have considered as favorable to Stanton the fact that he agreed to the judgment between ExxonMobil and Stanton Oil less than one month after suit was filed because this shows that he is amenable to correction when confronted with a wrong. We note, however, that the compensation sought by ExxonMobil in its complaint against Stanton Oil included interest, both pre-judgment and post-judgment, which would have increased until entry of judgment and recovery of all damages. Thus, Stanton Oil and Stanton may have had a financial incentive to expeditiously agree to and satisfy the judgment. The record, however, does not contain enough information about the actions and dealings between the parties in the ExxonMobil litigation to make a determination whether the agreed judgment between ExxonMobil and Stanton reflects on his amenability to correction one way or another. Accordingly, Stanton's prompt agreement to judgment, in the absence of further proof of the dealings between the parties, is not evidence that a reasonable mind might accept as adequate to support the conclusion that he is amenable to correction and therefore a good candidate for pretrial diversion.

Finally, Stanton asserts that a December 4, 2009 letter to him from TDEC notifying him that Stanton Oil was in violation of TDEC rules pertaining to underground storage tanks stated "[t]he record reflects that, upon being notified, you performed the necessary actions to address the violations and returned to compliance." Stanton contends that the assistant district attorney general abused his discretion by failing to consider this statement as evidence in Stanton's favor. We disagree. This statement does not constitute substantial evidence favorable to Stanton. The assistant district attorney general's response discussed Stanton's interaction with TDEC as follows:

> After interviewing Elwin Hannah, CFO UST in Cookeville the
> District Attorney General's Office learned that TDEC has had
> consistent problems with the Defendant and his compliance with
> TDEC Rules and Regulations concerning his various gas
> stations for many years. A review of TDEC files concerning the
> Defendant revealed that the Defendant has been issued

-14-

numerous "Notice of Violation" letters detailing the Defendant's failure to comply with the Tennessee Petroleum Underground Storage Tanks regulations. Several of those "Notice of Violation" letters were subsequently followed up by "Enforcement Action Notice" letters issued after the Defendant failed to come into compliance with the Tennessee Petroleum Underground Storage Tanks regulations. Further, records from TDEC show that the Defendant has persisted in his refusal to follow their Rules and Regulations to the point that he has been assessed civil penalties. From February 2009 through February 2010 the Defendant has incurred $50,650.00 in civil penalties from TDEC for his failure to comply with the Tennessee Petroleum Undergound storage Tanks regulations. The year Febraury 2009 through February 2010 is indicative of the Defendant's past with TDEC. The records review conducted by the District Attorney General's Office includes "Notice of Violation" letters and "Enforcement Action Notice" letters from the mid 1990s through the present.

Attached to the assistant district attorney general's response are four letters dated February 19, 2009; October 16, 2009; December 4, 2009; and February 22, 2010 from TDEC addressed to Stanton Oil Company in care of Stanton. Each of the first three letters is accompanied by a separate order assessing civil penalties against Stanton Oil Company for TDEC rule violations with respect to underground storage tanks. The letter of February 19, 2009, advises Stanton that with respect to the "Stanton Oil Bulk Plant," on February 12, 2008, TDEC inspectors discovered a rule violation for failure to properly operate and maintain a corrosive protection system and assessed a civil penalty in the amount of $1,500. The letter states that "[t]he record reflects that, upon being notified, you performed the necessary actions to address the violations and returned to compliance." The next letter, dated October 16, 2009, notifies Stanton of three violations with respect to Stanton Oil's Pit Stop South facility discovered by TDEC inspectors on April 14, 2009—a violation for failure to provide a proper release detection method for five underground storage tanks from January 2009 through April 2009 with an assessed penalty of $12,000; a violation for failure to keep spill catchment basins clean and free of water with an assessed penalty of $250; and a violation for failure to cooperate with TDEC by submitting requested documents in a timely manner with an assessed penalty of $2500. This letter contains precisely the same language quoted from the February 19, 2009 letter, recognizing that upon being notified that "[t]he record reflects that, upon being notified, [Defendant] performed the necessary actions to address the violations and returned to compliance." The third letter, dated December 4, 2009, notifies Stanton of two violations discovered by TDEC inspectors on March 25, 2009,

-15-

at Stanton Oil's Pit Stop North facility—a violation for failure to provide a proper release detection method for five underground storage tanks with an assessed penalty of $12,000 and a violation for failure to cooperate with TDEC by submitting requested documents in a timely manner with an assessed penalty of $2500. This letter also states that "[t]he record reflects that, upon being notified, you performed the necessary actions to address the violations and returned to compliance." The fourth letter merely refers to an attached order and assessment regarding Stanton Oil's Volunteer Market facility. On March 25, 2009, TDEC inspectors discovered a violation for failure to provide a proper release detection method and a violation for failure to cooperate with TDEC by submitting requested documents showing compliance with the release detection rule. The order also recites that TDEC sent an additional letter requesting demonstration of compliance but that, as of the date of the order (February 22, 2010), TDEC had not received any documentation to demonstrate compliance. The order assesses a total penalty of $19,900 for the violations and orders a cessation of operations of the underground storage tank systems at the facility.

In the context of these letters showing multiple violations of TDEC rules over a one-year period and Stanton's failure to cooperate by providing requested documentation, we do not agree that the language targeted by Stanton regarding his compliance constitutes substantial evidence of his amenability to correction. This is especially so given the following attestation from the affidavit of TDEC employee Elwin Hannah, the manager of the underground storage tanks division of TDEC's environmental field office at the time these letters were generated:

> [Stanton] is one of the more difficult operators that my department deals with and he has had multiple violations. He is frequently slow to correct said violations; that on at least five (5) occasions, if not more, there has been an Order and Assessment filed against [Stanton] and each has resulted in civil penalties being enforced against Mr. Stanton.
>
> It requires much more effort on our part to get [Stanton] to comply with the rules and regulations we enforce and he often refuses to do what he is instructed to do in order to come into compliance with the rules and regulations.

The letters show that Stanton failed to cooperate with TDEC by submitting requested documentation showing compliance, and TDEC employee Hannah's testimony shows that Stanton has been generally uncooperative and reticent to comply. Therefore, we do not agree that the language at issue constituted substantial evidence that the assistant district attorney

general was required to extract from the context of each of the letters and consider in his response to Stanton's application for pretrial diversion.

Finally, we address Stanton's argument that the assistant district attorney general abused his discretion because he failed to "accord weight to each piece of evidence either supplied by the [Defendant] or obtained by the [district attorney general]." Stanton misapprehends the required content of a district attorney general's denial of an application for pretrial diversion. As we noted in *Richardson*, the denial must be in writing and must enumerate the factors considered with a factual basis provided for each factor and the weight accorded to each factor. 357 S.W.3d at 626. The response must provide

> more than an abstract statement in the record that the district attorney general has considered these factors. Instead, the factors considered must be clearly articulable and stated in the record. That a defendant, obviously, bears the burden of demonstrating suitability for diversion does not relieve the prosecutor's obligation to examine all of the relevant factors and to set forth the required findings.

*Curry*, 988 S.W.2d at 157 (citations omitted) (internal quotation marks omitted). This standard requires that the denial enumerate the factors considered with a factual basis provided for each factor and the weight accorded to each factor. Contrary to Stanton's argument, however, the assistant district attorney general was not required to set forth the weight he assigned to each piece of evidence submitted. As we held in *Pinkham*, "the district attorney general is simply required to identify the factual basis and rationale for the decision," and the information set forth must be of sufficient detail to apprise the defendant of a factual dispute. 955 S.W.2d at 960.

The assistant district attorney general's response denying Stanton's application for pretrial diversion is set forth with sufficient particularity and, as required, lists evidence considered, discusses the factors considered, and describes the weight accorded to each factor. After describing the circumstances of the offense in detail, the assistant district attorney general's response discussed the factor of Stanton's social history and health and with respect to that factor, placed "significant weight" in Stanton's favor on his educational background and the fact he has no criminal record. This portion of the response also acknowledged the many reference letters received in support of Stanton and discussed with specificity the unfavorable circumstances of his interaction with ExxonMobil and TDEC. The response next addressed Stanton's amenability to correction and found that he was "unwilling[] to abide by rules and regulations until he is forced to, and sometimes not even then" as shown by his interaction with TDEC and ExxonMobil, his failure to bury the

dead horses on his farm until threatened with arrest, and his unwillingness to admit any wrongdoing. The response also placed "significant weight" on the factor of the interests of both the public and Stanton. With respect to this factor, the response again acknowledged the letters of support filed on behalf of Stanton, but concluded that the enactment of the animal cruelty statute indicated a public sentiment that a person who knowingly and unreasonably fails to provide necessary food to an animal in his or her custody should face punishment. Additionally, noting that Stanton retained horses in his possession and that he was unwilling to accept responsibility for his actions or admit wrongdoing, the response concluded that "the interests of neither the public nor the defendant would be served by a grant of pre-trial diversion." The response also considered the factor of the effect of pretrial diversion and deterrence and placed "great weight" on this factor. The response concluded that pretrial diversion should be denied based on this factor given the district's "strong stance against animal abuse," that a failure to prosecute would send a message that the harmful treatment of animals will not be "scrutinized," and that Stanton's "refusal to admit any wrongdoing negates the concept of deterrence." Finally, the response considered whether pretrial diversion would serve the ends of justice. The response placed "great weight" on this factor and concluded that "the ends of justice cannot be achieved when Stanton steadfastly refuses to accept responsibility for his actions, shows no contrition, and instead relies on his reputation in an effort to obtain favored treatment."

In sum, the assistant district attorney general did not abuse his discretion in denying Stanton pretrial diversion. The assistant district attorney general's written response detailed the reasons for denial, did not give undue consideration to an irrelevant factor, properly considered all substantial relevant evidence in favor of Stanton, and properly set forth, considered, discussed, and assigned weight to all factors that the assistant district attorney general was required to consider. The evidence does not preponderate against the assistant district attorney general's determination that pretrial diversion should be denied.

## III. Conclusion

We hold that the assistant district attorney general did not abuse his discretion in denying Stanton pretrial diversion. Accordingly, the judgments of the trial court and the Court of Criminal Appeals are affirmed. Costs on appeal are assessed to the appellant, Sidney S. Stanton III, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE

-18-