IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 1, 2014 Session

## STATE OF TENNESSEE v. PATRICK DAVID MCCOLLUM

**Appeal from the Circuit Court for Madison County**
**No. 11-273      Walter C. Kurtz, Senior Judge**

**No. W2013-00378-CCA-R3-CD  - Filed June 24, 2014**

The Defendant, Patrick David McCollum, pled guilty to one count of solicitation to commit aggravated assault, a Class E felony. See Tenn. Code Ann. §§ 39-12-102, -13-102. The trial court sentenced the Defendant as a Range I, standard offender to twenty months' incarceration. In this appeal as of right, the Defendant contends (1) that the trial court erred in denying his request for alternative sentencing; (2) that the trial court abused its discretion in denying his request for judicial diversion; and (3) that the State abused its discretion in denying his request for pretrial diversion. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Matthew M. Maddox, Huntingdon, Tennessee, for the appellant, Patrick David McCollum.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; James G. Woodall, District Attorney General; and Shaun Alan Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

FACTUAL AND PROCEDURAL BACKGROUND

*I. Factual Background*

Investigator Chris Chestnut of the Jackson Police Department (JPD) testified that in December 2010, the JPD received information from a "citizen informant" that the Defendant

was seeking to hire someone to murder a local attorney, Harold Johnson. Inv. Chestnut requested that Tennessee Bureau of Investigation (TBI) Agent Ken Rhodes assist in the investigation by posing as a hitman. The citizen informant arranged a meeting between the Defendant and Agent Rhodes at the Defendant's place of business.

Agent Rhodes met with the Defendant on the evening of December 21, 2010. Agent Rhodes wore "an electronic audio and video recorder" to the meeting as well as a backup recording device.[1] According to Agent Rhodes, the Defendant stated that he wanted Mr. Johnson beaten "with a baseball bat" but not killed. The Defendant told Agent Rhodes that Mr. Johnson had represented his ex-wife in their divorce proceedings and that Mr. Johnson and his ex-wife were "taking him for all of his money."

The Defendant instructed Agent Rhodes to "[r]etire" Mr. Johnson and "put him in the hospital." The Defendant explained to Agent Rhodes "how he would like for [Agent Rhodes] to do it." The Defendant suggested that Agent Rhodes spray Mr. Johnson with pepper spray. Agent Rhodes asked the Defendant what to do if Mr. Johnson's wife was home, and the Defendant instructed Agent Rhodes "to spray her too." The Defendant told Agent Rhodes to break Mr. Johnson's "wrists, his arms, his ribs, [and] his knee caps." When Agent Rhodes asked "what if Mr. Johnson has a heart attack" during the attack, the Defendant responded, "That's just tough."

The Defendant then gave Agent Rhodes a piece of paper with Mr. Johnson's phone numbers as well as his home and business addresses. The Defendant "described Mr. Johnson's physical appearance" to Agent Rhodes. The Defendant also gave Agent Rhodes two cans of pepper spray "to use during the assault." The Defendant told Agent Rhodes that Mr. Johnson "was an attorney and he probably [had] a lot of enemies over the years," so no one "would suspect [the Defendant] directly."

The Defendant also told Agent Rhodes about "a previous event where [the Defendant] had waited outside Mr. Johnson's home." The Defendant was wearing a mask and had "some kind of blunt instrument." The Defendant said that he had called Mr. Johnson and told him that his office was being burglarized "in an effort to get Mr. Johnson outside of his home." However, Mr. Johnson never left his home and the Defendant "was unsuccessful in the previous attempt."

The Defendant agreed to pay Agent Rhodes $1,000 "up front" and another $1,000 after the assault was completed, and Agent Rhodes "provided [the Defendant] with pictures

---

[1]The recording of the meeting was referred to repeatedly in the proceedings below. However, it was never entered as an exhibit to those proceedings and was not included in the appellate record.

of Mr. Johnson after the assault." The Defendant arranged another meeting with Agent Rhodes where he would pay Agent Rhodes the $1,000. The Defendant also stated that he would give Agent Rhodes a disposable cell phone to use to contact him after the assault.

Later that night, Agent Rhodes met with the Defendant in the parking lot of the local Wal-Mart. Agent Rhodes got into the Defendant's vehicle and the Defendant "produced two . . . brand new cell phones." The Defendant gave one of the phones to Agent Rhodes and kept the other. The Defendant then gave $1,000 to Agent Rhodes. Agent Rhodes "reiterated" that the Defendant wanted him to assault Mr. Johnson, and the Defendant responded "yes." Agent Rhodes then convinced the Defendant to go have a drink with him at a local restaurant. Once the Defendant was outside of his vehicle, Agent Rhodes gave "the take down signal," and the Defendant was arrested.

Mr. Johnson testified at the Defendant's sentencing hearing. Mr. Johnson testified that he had represented the Defendant's ex-wife in their divorce several years before. In 2010, he filed a motion to have one of the Defendant's children declared impaired because the child suffered from Down Syndrome. Mr. Johnson also sent a letter to the Defendant seeking to collect on fees owed by the Defendant as part of the divorce proceedings. Mr. Johnson testified that besides the letter, he had not had any contact with the Defendant for several years.

Just before Christmas in 2010, two JPD officers came to Mr. Johnson's home to inform him of the Defendant's arrest and the planned assault. Mr. Johnson was deeply disturbed when he learned the details of the Defendant's plan. Mr. Johnson testified that he believed the Defendant's actions were an affront "to the judicial system itself." Mr. Johnson further testified that given the publicity the case had received, anything less than the maximum sentence would "declare open war on any lawyer that's doing his job."

Several of the Defendant's family, friends, and acquaintances testified on his behalf at the sentencing hearing. Almost all of them testified that the Defendant's actions were extremely out of character. The Defendant was described as a former firefighter who had started his own cabinet-building business. The witnesses also described how the Defendant had gone on a church mission trip and held fund-raisers for various charitable causes. The Defendant's current wife testified that, during the pendency of this matter, the Defendant had fallen and broken both of his legs. There was a possibility that the Defendant would have to undergo additional surgery related to his injuries.

*II. Procedural Background*

On September 21, 2011, the Defendant filed a form application for pretrial diversion. Along with the application, the Defendant provided a list of references and a letter from his attorney listing his community involvement, employment history, and history of charitable actions. The State denied the Defendant's request for pretrial diversion in a letter dated October 10, 2011.

The letter stated that "most of the factors to be considered . . . would weigh in favor of diversion" including the Defendant's employment history and social history. However, the State gave little weight to these factors because the Defendant provided "no basis for the information" beyond the letter from his attorney. The State weighed the Defendant's criminal record against him despite the fact that it consisted "mainly of speeding violations and one incident of hunting over a baited field." The State, however, considered the Defendant's statement to Agent Rhodes that he had attempted to assault Mr. Johnson as part of the Defendant's "criminal history" and evidence that the Defendant had "repeatedly violated the laws of this state and [had] no regard for the law."

The remainder of the State's denial letter focused on the need for deterrence and the nature and circumstances of the offense. Both of these factors were weighed heavily against the Defendant. The letter stated that the Defendant's actions were "an attack on the judicial system" and that to allow them "to go unchallenged [would] invite future crimes and intimidation from any malcontent or criminal who encounter[ed] the rule of law." The State described the nature and circumstances of the offense as "callous," "malicious," "heinous," and "an affront to human dignity." The State then chided the Defendant for having "the unmitigated gall to ask for diversion" and referred to his request as "an affront to the intent of the statute."

No portion of the State's denial letter addressed the Defendant's amenability to correction or his physical and mental condition The Defendant filed a petition for writ of certiorari challenging the State's denial of pretrial diversion. The trial court held an evidentiary hearing on the matter and denied the Defendant's petition. This court then denied the Defendant's application for an interlocutory appeal.

At the sentencing hearing, the trial court and defense counsel had the following exchange during defense counsel's argument:

[Defense counsel]: Well, your Honor, [the Defendant] has an allocution that he wants to present to the Court. I don't know when you want to hear that, if that would help the Court at this time, we can present that allocution now.

[Trial court]: Well, allocution, let's see. I'm familiar with that in death penalty cases.

[Defense counsel]: Your Honor, I think it also applies in this case where he can make a statement to the Court prior to the pronouncement of sentencing.

[Trial court]: Well, go ahead and finish your argument.

Defense counsel finished his argument and the State made a brief rebuttal. At no point did defense counsel remind the trial court of the Defendant's request for allocution or ask again for the trial court to allow the Defendant to make an allocution.

At the conclusion of the parties' arguments, the trial court reviewed what the Defendant had solicited Agent Rhodes to do, "to break [Mr. Johnson's] kneecap, his ribs, his arms and see essentially that he was crippled for life." The trial court then stated that it had "considered the sentencing consideration. In fact and especially to not depreciate the seriousness of this crime." The trial court also found there were no mitigating factors to apply and that "there is not even an indication of remorse." The trial court also discussed the applicable enhancement factors.

In imposing its sentence, the trial court stated as follows:

Let me start, there's no occasion for the judge under what I just discussed to consider judicial diversion. I do not in my opinion believe that this is a case for probation. I think the seriousness of [the] assaultive nature of this crime and the serious implications here warrant a sentence to serve.

The trial court then imposed a sentence of twenty months and a $2,500 fine.

ANALYSIS

*I. Denial of Alternative Sentencing*

The Defendant contends that the trial court erred by denying his request for an alternative sentence. The Defendant argues that the trial court did not consider the applicable sentencing factors and failed to state its reasoning for denying the request. The Defendant also argues that the trial court denied him the right to allocution. The State responds that the trial court's decision was based upon its desire to avoid depreciating the seriousness of the offense. The State also responds that the trial court did not refuse to allow the Defendant to make a statement at the sentencing hearing.

On appeal, the burden is on the defendant to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts. Our supreme court has held that an "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

The Defendant was eligible for probation because the "sentence actually imposed upon [him was] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a). Thus, the trial court was required to automatically consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(b). However, no criminal defendant is automatically entitled to probation as a matter of law. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant has the burden of establishing his or her suitability for full probation. See State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant must demonstrate that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000).

In determining any defendant's suitability for alternative sentencing, the trial court should consider whether

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

The trial court stated that it had "especially" considered whether confinement was necessary to avoid depreciating the seriousness of the offense. The trial court stated that it believed that "the seriousness of [the] assaultive nature of this crime and the serious implications [of attacking an attorney] warrant a sentence to serve." The trial court chose to place significant weight on avoiding depreciating the seriousness of the offense and placed its reasoning for denying probation on the record. Accordingly, the Defendant has failed to establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded to the trial court's denial of alternative sentencing.

With respect to the Defendant's argument that the trial court denied him his right to allocution, defense counsel made the request in the middle of his argument on sentencing. The trial court told defense counsel to finish his argument and did not prohibit the Defendant from addressing the court at that time. Defense counsel finished his argument, the State responded, and the trial court imposed its sentence. At no point did defense counsel renew his request or remind the trial court of their earlier discussion. It appears from the record that the allocution request was overlooked by all of the parties at sentencing. We conclude that this issue is without merit because it was a mere oversight and not an actual refusal by the trial court to allow the Defendant allocution. See State v. Robert Eugene Crawford, Jr., No. E2012-00001-CCA-R3-CD, 2013 WL 4459009, at *27 (Tenn. Crim. App. Aug. 19, 2013).

## II. Judicial Diversion

The Defendant contends that the trial court erred in denying his request for judicial diversion. The Defendant argues that the trial court "failed to engage in the proper analysis in denying judicial diversion" and failed to consider "the proper factors in its decision." The State responds that there was "substantial evidence to support the trial court's decision" and that "confinement was proper based on the circumstances of the offense."

There is no dispute that the Defendant was eligible for judicial diversion. See Tenn. Code Ann. § 40-35-313(a)(1)(B) (2010). The decision to grant judicial diversion lies within the discretion of the trial court. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). When the trial court had placed "on the record its considerations for the grant or denial of judicial diversion, the determination should be given a presumption of reasonableness on appeal and reviewed for an abuse of discretion." State v. Kiara Tashawn King, --- S.W.3d ---, No. M2012-00236-SC-R11-CD, 2014 WL 1622210, at *1 (Tenn. Apr. 23, 2014). We may not revisit the issue so long as the record contains any substantial evidence to support the trial court's action. Parker, 932 S.W.3d at 958.

When making a determination regarding judicial diversion, the trial court must consider the following factors: (1) the defendant's amenability to correction; (2) the

circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's mental and physical health; (6) the deterrent effect of the sentencing decision to both the defendant and other similarly situated defendants; and (7) whether judicial diversion will serve the interests of the public as well as the defendant. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing Parker, 932 S.W.2d at 958); see also King, 2014 WL 1622210, at *8 (reaffirming that the Electroplating requirements "are essential considerations for judicial diversion").

A trial court is "not required to recite all of the Parker and Electroplating factors when justifying its decision on the record in order to obtain the presumption of reasonableness." King, 2014 WL 162210, at *9. However, "the record should reflect that the trial court considered the Parker and Electroplating factors in rendering its decision and that it identified the specific factors applicable to the case before it." Id. If the trial court "fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard . . . is not appropriate." Id. "In those instances, the appellate courts may either conduct a de novo review or . . . remand the issue for reconsideration." Id.

Here, the record does not reflect that the trial court considered the Parker and Electroplating factors in rendering its decision nor did it identify the specific factors applicable to this case. Instead, the trial court simply stated that "there's no occasion for the judge under what I just discussed to consider judicial diversion." As such, "the presumption of reasonableness does not apply and the abuse of discretion standard . . . is not appropriate." King, 2014 WL 162210, at *9. However, there is no need in this case to conduct a de novo review of the issue or remand it to the trial court for reconsideration.

This court has held that failure to consider and apply the Parker and Electroplating factors is harmless error "when a trial court has properly denied" alternative sentencing. State v. Rommel Obligacion, No. W2013-00702-CCA-R3-CD, 2014 WL 1494228, at *8 (Tenn. Crim. App. Apr. 15, 2014) (listing cases). The reasoning for this is that the "same guidelines are applicable in diversion cases as are applicable in [alternative sentencing] cases, but they are more stringently applied to those seeking diversion." State v. Jeremy Brandon Scott, No. M2010-01632-CCA-R3-CD, 2011 WL 5043318, at *10 (Tenn. Crim. App. Oct. 24, 2011) (quoting State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995)). Because we have affirmed the trial court's denial of alternative sentencing, we conclude that its "procedural failures constitute harmless error." Id.

*III. Pretrial Diversion*

The Defendant contends that the State erred in denying his request for pretrial diversion. The Defendant argues that the State "considered all the relevant factors" but that it abused its discretion in denying pretrial diversion. The State responds that it "provided in detail the factors considered, the weight accorded to each, and why the factors against pretrial diversion outweighed the factors in favor of pretrial diversion."

Pretrial diversion is an "'extraordinary relief' within the exclusive discretion of the prosecuting attorney" and available only to qualified defendants. Stanton v. State, 395 S.W.3d 676, 685 (Tenn. 2013). The parties agree that the Defendant was qualified for pretrial diversion. See Tenn. Code Ann. § 40-15-105(a)(1)(B)(i) (2010). However, eligibility for pretrial diversion "does not give rise to a presumption of entitlement to pretrial diversion." Stanton, 395 S.W.3d at 685. In exercising its discretion, the State has a duty to focus "on a defendant's amenability for correction" and to consider "all of the relevant factors, including evidence that is favorable to a defendant." State v. Bell, 69 S.W.3d 171, 178 (Tenn. 2002).

The relevant factors to be considered by the State are as follows: (1) the circumstances of the offense; (2) the defendant's criminal record; (3) the defendant's social history; (4) the physical and mental condition of the defendant when appropriate; and (5) the likelihood that pretrial diversion will "serve the ends of justice and the best interests of both the public and the defendant." State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983). The circumstances of the offense and the need for deterrence "cannot be given controlling weight unless they are of such overwhelming significance that they [necessarily] outweigh all other factors." Stanton, 395 S.W.3d at 686 (alterations in original) (quoting State v. McKim, 215 S.W.3d 781, 787 (Tenn. 2007)).

When the State denies a request for pretrial diversion, "the denial must be in writing and must enumerate the factors considered with a factual basis provided for each factor and the weight accorded to each factor." Stanton, S.W.3d at 686. We review the State's decision to deny pretrial diversion for an abuse of discretion. Id. The State abuses its discretion "by failing to consider and articulate all relevant factors, by considering and unduly relying upon an irrelevant factor, or by making a decision that is unsupported by substantial evidence." Id. at 686-87. On appellate review, we focus on the State's "methodology rather than the intrinsic correctness" of its decision; therefore, we do "not engage in re-weighing the evidence considered by" the State. McKim, 215 S.W.3d at 788.

The State's denial letter failed to address several of the required factors. Notably, nothing in the State's denial letter addressed the Defendant's amenability to correction or his

physical and mental condition.[2]  Furthermore, the State in its analysis of the Defendant's criminal record considered and unduly relied on an irrelevant factor.  The Defendant's criminal record consisted only of "speeding violations and one incident of hunting over a baited field."  However, the State considered what the Defendant told Agent Rhodes about a previous attempt to assault Mr. Johnson as part of the Defendant's criminal record.  While this uncharged conduct could be considered part of the Defendant's criminal history, it was not part of the Defendant's criminal record as he had never been charged or convicted of the attempted assault.  Additionally, the State's letter also chided the Defendant for having "the unmitigated gall to ask for diversion," seemingly holding the Defendant's application itself against him.

Typically, when the State has abused its discretion by failing to consider and articulate all the relevant factors or by considering and unduly relying upon an irrelevant factor, the reviewing court "must vacate the denial and remand the matter to the prosecuting attorney for further consideration of the application based on a proper assessment of all the relevant factors." Stanton, 395 S.W.3d at 686-87.  However, the same reasoning which underlies this court's cases finding harmless error regarding the denial of judicial diversion when the trial court has properly denied an alternative sentence has also been held to apply to pretrial diversion. See State v. Lovvorn, 691 S.W.2d 574, 577 (Tenn. Crim. App. 1985) (holding that "the same factors to be considered in [alternative sentencing] cases should also be considered in pretrial diversion cases, but that the factors should be more stringently applied against the defendant in diversion cases").  Accordingly, we conclude that the State's errors in denying pretrial diversion were harmless.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

---

[2]A portion of the denial letter stated that the Defendant's "mental state at the time of the crime" had been weighed against diversion because the Defendant intentionally committed the offense.  However, this factor addresses a defendant's mental condition at the time of the application for pretrial diversion rather than the mens rea for the underlying offense.