FILED

06/03/2020

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 8, 2020

**STATE OF TENNESSEE v. MONTERIO FUNZIE**

**Appeal from the Criminal Court for Shelby County**
**No. 15-01203      W. Mark Ward, Judge**

_____

**No. W2018-02222-CCA-R3-CD**

_____

Defendant, Monterio Funzie, was indicted by the Shelby County Grand Jury for sexual battery by an authority figure and sexual battery. According to the judgment, Defendant pleaded guilty to sexual battery, and the remaining charge was dismissed on motion of the State. Following a sentencing hearing, the trial court sentenced Defendant as a multiple offender to three years to be served in a workhouse. On appeal, Defendant contends that the trial court abused its discretion by denying his request for judicial diversion and that his sentence is excessive. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

J. Jeffrey Lee, Memphis, Tennessee, for the appellant, Monterio Funzie.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Gavin Smith and Leslie Byrd, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Sentencing hearing*

Defendant testified at the sentencing hearing. He acknowledged that he had inappropriate sexual contact with the victim, who was his niece. Defendant testified, "I didn't understand that I was making someone uncomfortable by being close to them." He

testified that he recognized he hurt the victim. Defendant testified that he had "learned a lesson throughout this case," and that he did not intend to "put anybody in a[n] awkward position or make them feel uncomfortable."

Defendant testified that he had served in the United States Navy for 14 years as a culinary specialist, a/k/a a cook. He testified that he had been ineligible for promotions as a result of the charges against him and that he would finish his contract and receive an "other than honorable" discharge in 2020. Defendant testified that he became "[m]entally distressed" during the pendency of his case and had gone "AWOL" from the Navy. Specifically, Defendant did not report for work for 30 days. Defendant testified that he was visiting family in Texas while he was stationed in Virginia. Two weeks prior to the sentencing hearing, Defendant was found guilty of a violation of Article 85 of the Uniform Code of Military Justice, and he was sentenced by his commanding officer for desertion, which meant that he was not allowed to leave his ship for 45 days.

On cross-examination, Defendant testified that he did not know that "sitting next to someone" would make that person feel uncomfortable. He acknowledged that he had been accused of sitting beside his niece and asking, "are you going to let me [expletive] you," and then touching her vagina. Defendant denied that he touched the victim's vagina during the following exchange with the trial court:

> THE COURT: Okay. I – I'm not – I'm a little unclear. You pled guilty to sexual battery of this –
>
> [Prosecutor]: I believe he plead [sic] guilty to sexual battery out of range, for a sentence of three years, according to my file.
>
> [Defense counsel]: That's correct, Judge, count two.
>
> [Prosecutor]: Count one was nol-prossed [sic] as part of the –
>
> THE COURT: Who was it he battered? Who did you batter?
>
> THE DEFENDANT: It was [my] niece, sir.
>
> THE COURT: Your niece? One time or more than one time?
>
> THE DEFENDANT: That was it, sir.
>
> THE COURT: Okay. One – one – time incident?

- 2 -

[Defense counsel]: My understanding is this is one incident.

[Prosecutor]: I believe so, Judge.

THE COURT: Okay. And how old was your niece?

THE DEFENDANT: I'm not sure of the age, sir.

THE COURT: Well she's your niece.

THE DEFENDANT: Yes.

THE COURT: What in – how did you batter her? How did you touch her?

THE DEFENDANT: She said I – I touched her, sir.

THE COURT: Touch – where did you touch her at?

THE DEFENDANT: Privates, sir.

THE COURT: What private?

THE DEFENDANT: Vagina.

[Prosecutor]: She was 15 years old then.

THE COURT: And with – how did – what did you touch her with?

THE DEFENDANT: My hand, sir.

THE COURT: Okay. And I don't understand, why would you touch a 15-year-old girl's vagina with your hand?

THE DEFENDANT: Sir, I did not sir.

THE COURT: What do you mean?

THE DEFENDANT: I did not touch her.

THE COURT: Okay. Well you pled guilty to touching her.

THE DEFENDANT:  Yes, sir, and I –

THE COURT:  So I have to sentence you though as if you touched a 15-year-old girl's vagina.  That's – I've gotta – you pled guilty to it so I can't sentence you as though you didn't do it.

The trial court asked defense counsel if he had any more witnesses to present, and defense counsel answered that he did not.  Defense counsel then informed the trial court that "this was pled under no contest, and although [Defendant] doesn't agree with the accusations as they were made, he has accepted – [.]"  The trial court stated:

THE COURT:  'Cause I don't take Alford versus North Carolina guilty pleas when there's no agreement as to punishment.  'Cause I get into a situation like this when the defendant gets up here and says, give me probation because I really didn't do it which kind of puts me in a[n] untenable – I've gotta have a mini trial.  But anyway, so it's no contest so it – it's not Alford versus North Carolina, he just didn't contest it.  Okay.

The trial court stated that it considered the evidence presented at the sentencing hearing, including the presentence report, the principles of sentencing, the nature of the criminal conduct involved, any applicable enhancement and mitigating factors, statistical information from the Administrative Office of the Courts, Defendant's statement, and the risk assessment, which the trial court noted "showed [Defendant] as a low offender."  The trial court found that Defendant was considered a favorable candidate for alternative sentencing in the absence of evidence to the contrary and noted that the State had not presented any evidence regarding the relationship between Defendant and the victim.  The court stated:

I think sexual battery by an authority figure is eligible for probation but not diversion.  I could deny judicial diversion based upon [ ] this really having been an authority figure if I had evidence before me that he was really an authority figure.  But since I don't have that evidence I can't do that.

The State announced that the victim wished to testify.  The trial court questioned the victim, asking "all I want to know is was [Defendant] lying to me just now?  That's all I want to know.  Was he lying?" The victim testified that "[i]t wasn't just one time . . . it was multiple times because he was there for a[ ]while."  The trial court asked the victim how Defendant was related to her, and she testified that Defendant was her "dad's

- 4 -

brother." The prosecutor asked the victim what Defendant had done to her. The victim testified that Defendant "had been drinking[,]" and he asked her, "can I 'F' you?" The victim told Defendant, "no." Defendant then asked the victim, "can I touch you?" The victim again told Defendant, "no[,]" and Defendant "did it anyways and he started to kiss [her] and put his hands inside [her] pants."

The trial court then recalled Defendant, stating "Let's put him back on. Come on back, sir. You're still under oath." The trial court questioned Defendant, "I just want to ask him one question. Is she lying through her teeth?" Defendant responded, "Sir, yes, sir."

The trial court continued its consideration of the relevant factors, finding that: 1) regarding Defendant's amenability to correction, "anybody could be corrected at some point[;]" 2) the circumstances of the offense were "somewhat aggravated" because Defendant was related to the victim; 3) Defendant's criminal record was "not favorable" because of a prior DUI conviction and Defendant's military violation; 4) Defendant's social history was also not favorable due to his military record; 5) Defendant's physical and mental health were "okay[;]" 6) the deterrent effect was "neutral[;]" and 7) whether judicial diversion would be in the interest of the public as well as Defendant was also "neutral."

The trial court concluded, "before I heard [testimony from the victim], I was gonna deny him judicial diversion anyway, based upon these factors, primarily the criminal record, the social history, and the seriousness of the offense." The trial court found that the victim's testimony was credible and Defendant's testimony was not. Regarding alternative sentencing, the trial court also found that: 1) Defendant's criminal record was "not so bad in and of itself to deny an alternative sentence[;]" 2) the offense was "extremely serious[,]" but Defendant was statutorily eligible for alternative sentencing; and 3) there was no evidence that measures less restrictive than confinement had been applied unsuccessfully to Defendant. The trial court denied alternative sentencing.

*Analysis*

Defendant challenges the trial court's denial of his request for judicial diversion. Defendant argues that the trial court abused its discretion by basing its decision on Defendant's denial of wrongdoing, and that the trial court insisted that Defendant entered a "guilty plea" rather than a "no contest" plea to the charge. The State asserts that the trial court properly denied judicial diversion based on Defendant's "untruthfulness and lack of candor with the court."

Pursuant to Tennessee Code Annotated section 40-35-313(a)(1)(B)(i)(a)-(e), a defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty or *nolo contendere* to a Class C, D, or E felony; is not seeking deferral for an offense committed by an elected official; is not seeking deferral for certain sexual offenses (including sexual battery by an authority figure, but not sexual battery, the offense to which Defendant pleaded no contest); has not been convicted of a felony or a Class A misdemeanor previously and served a sentence of confinement; and has not been granted judicial diversion or pretrial diversion previously. In determining whether to grant a defendant judicial diversion, the trial court must consider all of the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the status of the defendant's physical and mental health, (6) the deterrence value to the defendant and others, and (7) whether judicial diversion will serve the interest of the public as well as the defendant. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)).

The record must reflect that the trial court has taken all of the factors into consideration, and "we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision." *Id*. Furthermore, "[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." *Id*. When reviewing a trial court's decision to grant or deny judicial diversion, the standard of review is abuse of discretion with a presumption of reasonableness. *State v. King*, 432 S.W.3d 316, 327 (Tenn. 2014). However, if the trial court failed to weigh and consider the relevant factors, this court may conduct a de novo review or remand the case for reconsideration. *Id*. at 328.

In denying judicial diversion, the trial court stated, "He's pled guilty to this. That's sort of an objective thing. I have to sentence him as though he's guilty of this. . . ." Defendant argues that the trial court's statements show that the court "rejected" his no contest plea and "applied the wrong standard, i.e., a guilty plea." Defendant further argues that the trial court's analysis was "hasty" and that it "failed to meaningfully weigh the required factors in denying the diversion and instead relied on . . . [an] assessment of who was telling the truth regarding the other's testimony. We disagree.

A defendant is not required to admit guilt with respect to a crime in order to qualify for diversion. *Stanton v. State*, 395 S.W.3d 676, 688 (Tenn. 2013). "[T]he failure of the defendant to admit guilt is not, in and of itself, a proper basis for denying diversion." *State v. Oakes*, 269 S.W.3d 574, 578 (Tenn. Crim. App. 2006). "However, there is a critical distinction between confessing guilt to a crime and accepting responsibility for wrongful conduct. Admitting that one's conduct complies with the

elements of a criminal offense and accepting responsibility for wrongful conduct are not necessarily synonymous." *Stanton*, 395 S.W.3d at 688-89. The failure to admit any wrongdoing or accept any responsibility is a relevant consideration to the denial of judicial diversion. *State v. Henri Brooks*, No. W2015-00933-CCA-R3-CD, 2017 WL 758519, at *9 (Tenn. Crim. App. Feb. 27, 2017), *no perm. app. filed*. A trial court may consider a defendant's denial of guilt in terms of his credibility, a factor properly considered in a judicial diversion determination. *See State v. Leroy Collins*, No. W2016-01685-CCA-R3-CD, 2018 WL 1640407, at *4 (Tenn. Crim. App. April 5, 2018), *no perm. app. filed* ("The most determinative, controlling factor justifying affirmance of the denial of judicial diversion is the finding by the trial court of Defendant's lack of credibility. . . .").

The record in this case reflects that the trial court individually examined each of the relevant factors in denying Defendant's request for judicial diversion and stated its reasons on the record. The trial court explained that although Defendant was eligible for judicial diversion, certain factors weighed against Defendant, including his criminal record and the circumstances of the offense. We conclude that there is substantial evidence in the record to support the trial court's denial of judicial diversion. Defendant argues that although he denied that he touched the victim's vagina, he admitted wrongdoing by testifying "that he learned a lesson in this case, which is that he should never put anybody in an awkward position or make them feel uncomfortable [sexually]." However, the trial court accredited the victim's testimony and explicitly found Defendant's testimony not credible. The trial court properly considered Defendant's denial of the alleged conduct as an indication of his lack of truthfulness or candor. The record reflects no abuse of discretion. Defendant is not entitled to relief.

Finally, in a two-paragraph section of his argument, Defendant asserts that the trial court's denial of alternative sentencing was excessive. However, Defendant cites no authority. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Defendant's entire argument in support of the issue is that he was "harshly sentenced with no regard for his military service, his lack of significant criminal history, his juvenile record when he was nine and ten years old, and quite frankly, because he would not plead guilty."

A trial court should consider the following when determining any defendant's suitability for alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).

The record reflects that the trial court thoroughly considered the factors relevant to an alternative sentence determination, and the court concluded that Defendant's untruthfulness regarding the alleged conduct was a valid reason to deny an alternative sentence. A defendant's truthfulness can be probative on the issue of the defendant's potential for rehabilitation. *See State v. Dowdy*, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994); *State v. Justin Daniel Adams*, No. M2016-00835-CCA-R3-CD, 2017 WL 929414, at *6 (Tenn. Crim. App. Mar. 8, 2017), *no perm. app. filed*. Moreover, a defendant's lack of candor militates against the grant of an alternative sentence. *See, e.g., State v. Kendrick*, 10 S.W.3d 650, 656 (Tenn. Crim. App. 2001). Additionally, we note that it was undisputed that Defendant went AWOL from his naval station while the sexual battery charges were pending in the trial court. This conduct also indicates a poor potential for rehabilitation. The trial court's decision to deny alternative sentencing was supported by clearly articulated reasons, and Defendant has failed to prove that the court abused its discretion. Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE