IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 29, 2020 Session

## STATE OF TENNESSEE v. BRANDON LUKE BARON

**Appeal from the Criminal Court for Cumberland County**
**No. 17-32    Wesley Thomas Bray, Judge**

_____

### No. E2019-02062-CCA-R3-CD
_____

The Defendant, Brandon Luke Baron, appeals from the Cumberland County Criminal Court's denial of his request for judicial diversion following his guilty plea to child abuse, a Class D felony. *See* T.C.A. § 39-15-401 (2014) (subsequently amended). The court imposed the agreed-upon two-year sentence and ordered the Defendant to serve it in the Department of Correction. The Defendant contends that the court erred in denying judicial diversion. We conclude that the trial court failed to consider and weigh all of the relevant factors in accord with *State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998), and *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996), but upon de novo review, we affirm the judgment of the trial court denying judicial diversion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

M. Todd Ridley (on appeal), Assistant Public Defender – Appellate Division; Craig P. Fickling (at hearing), District Public Defender; Laura Dykes (at hearing), Assistant District Public Defender, for the Appellant, Brandon Luke Baron.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; Phillip A. Hatch and Jessie Mayberry, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

According to the State's recitation of facts at the guilty plea hearing:

> The proof would show that on August 31st, 2016 [the Defendant] did treat a minor child under the age of eight . . . , in a manner causing bodily injury to the child. Investigator Gary Green with the Cumberland County Sheriff's Department observed from a photograph bruising and marks on the child and interviewed the [D]efendant, who did admit striking the child with a belt.

Pursuant to a plea agreement, the Defendant pleaded guilty to the offense with an agreed-upon two-year sentence, with the understanding that the Defendant would seek judicial diversion and that the trial court would determine the manner of service of the sentence if the court denied judicial diversion.

At the sentencing hearing, Christopher Goddard, a probation officer, testified that he conducted the presentence investigation and prepared the presentence report, which was received as an exhibit. Mr. Goddard testified that a security officer and a sheriff's deputy responded to a residential call regarding "an unspecified matter." Mr. Goddard said the officers learned that the Defendant had hit a child on the back with a belt and that the Defendant had left the house before the officers arrived. Mr. Goddard said a deputy spoke with the victim, who reported soreness on his back and side. The deputy observed a large bruise extending from the victim's lower back to the victim's shoulders and belt marks on the victim's right shoulder and left eye. Mr. Goddard said the victim told a deputy that when the victim arrived at home from school, the Defendant "grabbed him by his backpack and threw him on the bedroom floor[,] . . . held the victim down and continued to spank him with the belt." Mr. Goddard said the victim reported that he struck the victim "for not being good in school." Mr. Goddard said the victim was taken by ambulance to a hospital, where he was examined and released. Mr. Goddard said the victim's mother declined to give a statement and to seek an order of protection against the Defendant.

Mr. Goddard testified that the Defendant provided a statement to Mr. Goddard regarding the incident. In the statement, the Defendant said that the victim, his eight-year-old stepson, had misbehaved extensively and that the Defendant and the child's mother had tried various rewards and punishments without success. The Defendant stated that the victim intentionally hurt his two-year-old sister and that, after a neighbor accused the victim of misbehavior toward the neighbor's child, the victim had shot out the neighbor's truck window with a BB gun. The Defendant stated that on the date of the incident involved in this case, the victim brought home a letter from school which stated

he had cursed at a teacher, and that when asked about the incident at school, the victim cursed at his mother. The Defendant stated the following:

> I took him inside and pushed him onto the bed to spank him. My father used a belt on me and I didn't know any better. I spanked him harder than I meant to because I was frustrated and lost my temper. I told the police everything that day and cried because I was so ashamed. I will never do anything like this again.

Mr. Goddard agreed that the Defendant had been charged after the offense in the present case with driving while his license was suspended and that the Defendant pleaded guilty to "no drivers license," a Class C misdemeanor. A certified copy of the conviction was received as an exhibit.

Mr. Goddard testified that the Defendant reported using marijuana socially, but that he no longer used it. The presentence report reflects that the Defendant last used marijuana in 2018, two years after the offense in the present case. Mr. Goddard said the Defendant reported that he drank alcohol but that he did not drink excessively. Mr. Goddard said the Defendant's drug screen was positive for marijuana and negative for other substances. Mr. Goddard said the Defendant signed an acknowledgment stating he had used "CBD marijuana from a hemp shop." Mr. Goddard said the laboratory that analyzed the drug test could not differentiate between CBD oil and marijuana.

Photographs of the victim's injuries were received by stipulation as an exhibit.

Mr. Goddard testified that the twenty-seven-year-old Defendant was a high school graduate and had maintained continuous employment and supported his wife and the children who lived with them, one of whom was the Defendant's biological child. Mr. Goddard said the Defendant had appeared for court proceedings as scheduled in the three and one-half years the case had been pending. Mr. Goddard said that the Strong-R report indicated the Defendant was "low risk" in all categories except mental health and that the Defendant reported "a little bit of . . . depression" because of the length of time the case had been pending.

The Defendant testified that, between his wife and himself, they had four children "and one on the way." He said he supported the three children who lived with him and that he did not support another one who did not live with them. He said his wife did not work.

The Defendant testified that his positive drug screen result was due to his CBD use. He said he used it because he had pain from physical labor with a moving company. He said he would not use CBD if granted probation. He said he had not known CBD use

"was wrong," but he also stated he had been told the product he used would not cause a positive drug test result "unless I used plenty of it."

The Defendant testified that he had cried on the night of the offense because he was scared and knew he had hurt the victim. He said he was ashamed. He agreed that his wife had delivered a baby a month before the offense and that they had not slept well with a newborn in the home.

The Defendant testified that he had received corporal punishment as a child and that he thought it was "sometimes the only way to learn if you try everything else." Regarding the incident with the victim, the Defendant said he had not known what to do and had been afraid his children would be taken from his home due to the victim's conduct toward other children. He said that he did not strike his children with a belt anymore and that they talked through issues. He said he had learned his lesson over the past three years. Relative to the offense, he acknowledged telling an officer on the date of the offense that he "just lost it" and said he had been angry, tired, and upset. The Defendant said he attended anger management classes, which had been ordered by the Department of Children's Services.

The Defendant testified that before the offense, the victim "would not take any direction whatsoever." The Defendant said the victim hurt the victim's sister. The Defendant said he and his wife tried various disciplinary approaches without success. The Defendant said his wife asked the victim why the victim was "doing this," that the victim responded "f--- you" to her, and that this precipitated the incident.

When shown photographs of the victim's injuries, the Defendant testified that a mark on the victim's side might have been caused by the Defendant's hitting the victim but might have been caused by the victim's fall from a motorcycle on the date of the incident. The Defendant stated the victim had fallen out of a tree about one week before the incident. The Defendant said he would accept responsibility for the victim's injuries "if it gets it over with." The Defendant said he had not caused the injury on the victim's forehead by hitting the victim's head but acknowledged he had forced the victim on a bed and held down the victim by the loop on the victim's backpack while administering blows with a belt. He acknowledged the victim's injuries to the victim's back and shoulder area and underarm. He said he had not struck the victim's buttocks or legs. The Defendant said his conduct had been unacceptable. He said he had "whooped" the victim in order to keep the victim from hurting other children in the future. The Defendant said he had been "lost" and had not known where to obtain help.

The Defendant testified that he had learned his lesson, that his children had been "taken away," that he had to pay $3000 in child support to regain custody, and that he

had "had all this crap." The Defendant said the victim's grandmother had tried to "[turn] him against" the Defendant.

After the parties submitted their proof, the prosecutor argued that the trial court should deny judicial diversion and impose a split confinement sentence involving sixty days of jail service. The defense argued that the court should grant judicial diversion.

The trial court noted that the Defendant "was blaming [the victim's injuries] on [the] motorcycle and falling out of the tree," which the court said reflected on the question of the Defendant's remorse. The court found that the victim's injuries as depicted in the photograph exhibits were consistent with "repeated lashing from a belt" and were inconsistent with falling from a tree or a motorcycle accident. The court noted, as well, that the Defendant's testimony was the only evidence regarding the victim's misbehavior leading up to the incident. The court stated that it had considered the hearing evidence, the presentence report, the principles of sentencing, the arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, and the statutory mitigating and enhancement factors. The court found the existence of two enhancement factors: that the Defendant had a prior history of criminal convictions and behavior, and that the victim of the offense was particularly vulnerable due to age or physical or mental disability. *See* T.C.A. § 40-35-114(1), (4) (Supp. 2016) (subsequently amended). In considering the mitigating factors the court found that the Defendant's conduct neither caused nor threated serious bodily injury. *See id.* § 40-35-113(1) (2019).

Turning to the question of judicial diversion, the trial court denied diversion based upon the circumstances of the offense, because granting diversion would not serve the public interest, and due to the seriousness of the offense. The court said that, in addition, the denial of diversion was appropriate because the Defendant obtained a conviction while the charge in the present case was pending and because the Defendant had a positive drug test for marijuana use. The court noted that "it's pretty obvious that [the court] wasn't terribly happy" when it accepted the Defendant's guilty plea and that a person who requested diversion should "not do anything to jeopardize that." The court noted that the Defendant had received a minimum, two-year sentence pursuant to the plea agreement.

In ordering the Defendant to serve his sentence in the Department of Correction, the trial court found that the Defendant's testimony had not been credible and that Mr. Goddard's testimony had been credible. The court found that confinement was appropriate in order to avoid depreciating the seriousness of the offense or was particularly suited to provide effective deterrence to others. *See id.* § 40-35-103(1)(b). The court found that the State's recommendation that the Defendant serve sixty days was an insufficient period of confinement, given the victim's injuries, the positive drug test,

and the Defendant's explanation of the offense. The court ordered the Defendant to serve the two-year sentence. This appeal followed.

The Defendant contends that the trial court erred in denying his request for judicial diversion. A trial court may order judicial diversion for certain qualified defendants who are found guilty of or plead guilty or nolo contendere to a Class C, D, or E felony or a lesser crime; have not previously been convicted of a felony or a Class A misdemeanor; and are not seeking deferral for a sexual offense. *See* T.C.A. § 40-35-313(a)(1)(B)(i) (Supp. 2013) (amended 2014). The grant or denial of judicial diversion is within the discretion of the trial court. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (citing T.C.A. § 40-35-313(a)(1)(A)). When considering whether to grant judicial diversion, a trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, (6) the deterrence value to the defendant and others, and (7) whether judicial diversion will serve the ends of justice. *State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); *see King*, 432 S.W.3d at 326 (stating that recent caselaw affecting the standard of review for sentencing determinations "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion"). "The record must reflect that the court has weighed all of the factors in reaching its determination." *Electroplating*, 990 S.W.2d at 229. If a trial court refuses to grant judicial diversion, "[T]he court should clearly articulate and place in the record the specific reasons for its determinations." *Parker*, 932 S.W.2d at 958-59. "The truthfulness of a defendant, or lack thereof, is a permissible factor for a trial judge to consider in ruling on a petition for suspended sentence." *State v. Neeley*, 678 S.W.2d 48, 49 (Tenn. 1984).

On review of a decision to grant or deny judicial diversion, this court will apply a presumption of reasonableness if the record reflects that the trial court considered the *Parker* and *Electroplating* factors, specifically identified the relevant factors, and placed on the record the reasons for granting or denying judicial diversion, provided any substantial evidence exists to support the court's decision. *King*, 432 S.W.3d at 327. If, however, the trial court failed to consider and weigh the relevant factors, this court may conduct a de novo review or remand the case for reconsideration. *Id.* at 328.

Likewise, a trial court's reliance upon an irrelevant factor may result in an abuse of discretion. *See State v. McKim*, 215 S.W.3d 781, 787 (Tenn. 2007). However, a court's mere consideration of an irrelevant factor does not result in an abuse of discretion because "it is the undue consideration of an irrelevant factor that is prohibited." *See Stanton v. State*, 395 S.W.3d 676, 687 n.2, 691 (Tenn. 2013) (stating the rule in the context of a review of a district attorney general's denial of pretrial diversion). A "trial court is not required to recite on the record all of the . . . factors; however, the record

should reflect that the trial court considered all of the factors in rendering its decision and that it 'identified the specific factors applicable to the case before it.'" *State v. Dycus*, 456 S.W.3d 918, 930 (Tenn. 2015) (quoting *King*, 432 S.W.3d at 327.).

The Defendant argues that the trial court failed to consider and weigh the *Electroplating* factors. He argues that, as a result, review for abuse of discretion is inappropriate and that this court should conduct a de novo review of the record and grant judicial diversion. The State counters that the trial court was not required to mention each factor or use "magic language," that the record reflects the trial court adequately identified the *Electroplating* factors upon which it denied diversion, and that the court's decision was not an abuse of discretion.

The record reflects that the trial court specifically referred to two of the *Electroplating* factors:

> Number two, in that first case was the circumstances of the offense. Number seven, doesn't serve the public interest. My own reason for denying him diversion is while he was out on bond for this offense he did pick up a conviction. Although that was a lower level offense, he still did pick up a conviction while he was pending on this charge. He also has a positive test for marijuana.

In addition, the court stated, "[T]he seriousness of the offense requires the denial of diversion." The court also stated, "I don't classify this . . . just as a child abuse, I classify it as a beating. And you gave that child a beating. That's just not something you can do." In its consideration of suitability of judicial diversion, the court did not address the remaining *Electroplating* factors and did not attempt to weigh the factors. We conclude, therefore, that the record fails to reflect that the court consider and weigh all of the factors in rendering its decision. *See Dycus*, 456 S.W.3d at 930; *King*, 432 S.W.3d at 327.

Because the trial court failed to consider and weigh the relevant factors, this court may conduct a de novo review or remand the case for reconsideration. *King*, 432 S.W.3d at 328. The record in the present case is sufficient for de novo review, and we will consider the question of judicial diversion de novo. *See Dycus*, 456 S.W.3d at 931; *King*, 432 S.W.3d at 328.

Regarding the Defendant's amenability to correction, the trial court found that the Defendant minimized his culpability for the offense and blamed his reaction on the victim's misbehavior. The court also found that the Defendant blamed some of the victim's injuries on the victim's fall from a motorcycle and fall from a tree. We note, as well, the Defendant's use of marijuana and commission of a driving offense after he was

charged with the present offense. Although the Defendant claimed his positive drug test result was due to his use of a legal CBD product, the presentence report reflects that he last used marijuana in 2018, which was after the offense. This factor weighs against a grant of diversion.

Turning to the circumstances of the offense, the trial court found that the facts were an egregious use of force on a young child, beyond a mere showing of the elements of the offense. The photographs depicting the victim's injuries support the court's finding. This factor weighs heavily against a grant of diversion.

The Defendant's criminal record is minor, consisting of a single conviction of driving without a valid license. As we have stated, however, the Defendant committed this offense while the present case was pending. We weigh this factor as neutral regarding the Defendant's suitability for judicial diversion.

Regarding the Defendant's social history, the record reflects that he is a high school graduate, that he is married with children, that he has maintained steady employment, and that he has completed anger management coursework though DCS. This factor weighs in favor of a grant of diversion.

Regarding the Defendant's physical and mental health, the record reflects no significant physical ailments, aside from the Defendant's report of pain from physical labor. The record reflects that the Defendant has had some depression due to the long pendency of this case. We weigh this factor neutrally relative to a grant of diversion.

Regarding the deterrence value to the Defendant and others and the question of whether a grant of diversion will serve the ends of justice, we note the trial court's findings that the Defendant's testimony was not credible and that the Defendant minimized his culpability for his conduct by placing blame on the victim's misbehavior and on other sources of injuries. We conclude that a grant of diversion would not provide an effective deterrence to the Defendant or to others in these circumstances. Likewise, we conclude that diversion will not serve the ends of justice. We weigh these factors moderately against a grant of diversion.

Upon de novo consideration of all of the factors and the weight we have afforded to each, we conclude that, despite the trial court's shortcomings in its analysis, the court did not err in denying judicial diversion. We are compelled, particularly, by the factors regarding the Defendant's amenability to correction, the circumstances of the offense, the deterrence value to the Defendant and others, and whether judicial diversion would serve the ends of justice.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE