IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 3, 2021 Session

**STATE OF TENNESSEE v. MANNAN MEHDI**

**Appeal from the Criminal Court for Shelby County
No. C1903481, 19-02731   Carolyn W. Blackett, Judge**

_____

**No. W2020-00021-CCA-R3-CD**
_____

After being indicted for one count of sexual battery, Mannan Mehdi, Defendant, entered a best interest guilty plea with no agreement as to the sentence.  The trial court denied judicial diversion, ordering Defendant to a one-year sentence, suspended to probation.  The trial court also ordered Defendant to serve periodic confinement of "6 weekends in jail over the course of the probation."  Defendant appealed, arguing that the trial court improperly denied judicial diversion.  After a review, we determine that the trial court considered irrelevant factors in denying diversion.  As a result, we reverse and remand the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed
and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J. ROSS DYER, JJ., joined.

André C. Wharton, Memphis, Tennessee, for the appellant, Mannan Mehdi.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Sarah Poe, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In April of 2019, Defendant was indicted for one count of sexual battery by the use of force or violence.  Defendant pled guilty in a best interest plea to the charge as stated in the indictment.  At the guilty plea hearing, counsel for Defendant explained that there was

no agreement as to the sentence, so it was an "open plea." The State indicated that had the matter gone to trial, the State would have proven the following:

> [O]n September 29, 2018, officers were dispatched to Bailey Creek Apartments in Collierville, Tennessee[.] [A]partment leasing consultant, [H.S.][1] advised that at approximately 4:30 p.m. on that date [Defendant] came into the office to use the business center [and] asked for her help printing a document. The victim advised that she was leaning over [Defendant] and he started hugging her and grabbing her buttocks and then she stated that [Defendant] proceeded to kiss her left breast and moved his hand to the front part of her pants and attempted to put his hands on the front of her pants, before she brushed his hand away.

> The victim stated that this sexual contact was accomplished without her consent.

Counsel for Defendant stipulated to the facts but commented that there was "some debate in terms of the context of everything" but agreed that those would have been the facts had the matter gone to trial. The trial court accepted the plea to one count of sexual battery.

Immediately following the entry of the plea, the matter proceeded to a sentencing hearing. At the hearing, Defendant testified that he had a wife and small child who went to India for five months after the incident but were living in Texas at the time of the hearing. Defendant's wife wrote a note expressing her desire for Defendant to be placed on judicial diversion so that he could join his family.

Defendant's former neighbor, Abdul Mohammed, wrote a letter in support of Defendant's character. Mr. Mohammed described Defendant as a "hard worker" who is "conscious of others" and deserves a second chance.

Defendant explained that he was guilty of the offense and that he was "sorry it happened" but that his "intentions [were] not like that." Defendant did not challenge the order of protection that the victim sought and was granted after the incident. In fact, Defendant did not ask for a hearing on the order of protection. Defendant explained that he went to Christ Community Health Services and had an evaluation for depression. Defendant explained that he was placed on medication and took the medication "sometimes."

---

[1] This Court refers to victims of sexual abuse by their initials.

Defendant told the trial court that he used to drive a taxi in Chicago and worked at a mosque before he moved to Memphis. In Memphis, he volunteered at a mosque and delivered pizza for Dominos. Defendant assured the trial court that his inappropriate actions "won't happen again" and that he prayed he would "be [a] good husband and father to [their] baby."

The trial court halted Defendant's testimony about his past and stated the court would give defense counsel "a little guidance." The court announced that "all I need to know is, if he, in fact, did what is alleged in the guilty plea that he did. If he did, I want to know what he did." The court stated that it wanted to know "if he did that, then is he remorseful in any way, whatsoever," … and "that he will not do it again, and then, turn it over to the State, it's real simple, okay." When defense counsel informed the court that he was attempting to give the court "a little background," the court stated "I don't need all that, or we will be here all day long talking about his history." The court told defense counsel "and so we are talking about one thing, did it happen, how did it happen, are you remorseful and will it happen again. That's it."

When asked if he would reoffend, Defendant replied, "No, no, never, ever." The trial court asked Defendant why he committed the crime. Defendant tried to explain that sometimes his mind "makes [him] do things" but agreed with the trial court that he could have been depressed and missed his wife and did not use his best judgment.

The victim read part of a statement in which she explained that she was engaged to be married when Defendant assaulted her. She explained that the incident affected her relationship with the man who eventually became her husband. The victim went to therapy after the incident and now takes medication. The victim even transferred jobs because of the incident. The victim asked for Defendant to be "put on the registry so he can't hurt someone else, especially his daughter."

The victim admitted that she had an order of protection against Defendant for a year after the incident and that she did not hear from him during that time. She also admitted that when Defendant came into the office on the day of the incident, she helped him print a document. During their conversation, Defendant told her that he missed his wife and "felt like he needed someone" so she "patted him on the back."

At the conclusion of the proof, the trial court commented that Defendant's "honesty" was appreciated but that his "conduct was unacceptable." The trial court explained that Defendant's conduct "caused harm and a lot of problems for another individual" and she had "a problem with that" and found his conduct "very offensive" because there is no such thing as a "free touch[]." The trial court did not order Defendant to pay for the victim's therapy but placed Defendant on probation for one year, required him to serve six weekends

in incarceration, pay a $500 fine, and be placed on the sex offender registry for seven years. The trial court also ordered Defendant to continue counseling and medication.

After the court announced its decision, counsel for Defendant expressed his intention to appeal and asked the trial court to include the video of the interaction with the record. The trial court commented that she did not "need to see the video" because she "took into consideration the age of the victim" and the circumstances of the offense, and made her decision "considering all of the other facts, the fact that he's pled guilty to a [C]lass 'E' felony, the fact that he has a daughter." The trial court stated that "these types of acts, period, whether it is man against woman, woman to man, man to man, woman to woman, if someone touches you it's wrong, especially if you don't want it. And that's what I am basing my decision on." The trial court stated that "hopefully this is a deterrence for others in this community that you just cannot go up and kiss somebody's breast because you feel like it, . . . ." In closing, the trial court stated:

> The reason why he was not placed on diversion is that I do feel that people who do things like that, especially the fact that he has a child, I don't ever want to be in a situation that I hear that something happened to his daughter as a result of him, because nobody knew, because it was never on his record.
>
> I don't ever want to hear that something happened to another young person. And the reason why it happened is because nobody had any idea that he had a record, or had done it before, okay.
>
> That's a very personal, personal thing in terms of touching, sexually arousing, raping, all those things, that is in a whole different category. That is not stealing somebody['s] tires.

Counsel for Defendant told the trial court he was going to appeal and asked the court to forego execution of Defendant's sentence pending the appeal. The trial court agreed to hear argument on that matter. During argument, counsel for Defendant again asked the trial court to view the video. The trial court declined, telling counsel for Defendant that the hearing was over. Counsel for Defendant complained that the trial court limited the proof at the hearing. The trial court agreed, claiming that the defense was "totally off in terms of where [the proof was] going" in that Defendant's job and his daily life had nothing to with the hearing on diversion. Counsel for Defendant wanted to "make sure that all the different factors" were "dealt with" during the hearing and told the trial court it could consider the video under "Rule 32." The trial court again declined, commenting that the ruling denying diversion was "based upon the facts" found during the hearing "in terms of how serious the charge was, the reaction of the victim and everything." Counsel for

Defendant asked for the ability to enter the video as an offer of proof. The trial court declined the request and accused counsel for Defendant of "back-door[ing]" the court.

Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the trial court "failed to consider and weigh the relevant factors when denying Defendant's request for judicial diversion." Additionally, Defendant complains that the trial court denied Defendant an opportunity to be heard. The State, on the other hand, argues that the trial court properly denied diversion by considering the requisite factors.

When a defendant challenges the length, range, or manner of service of a sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. This same standard of review applies to the trial court's decision to grant or deny judicial diversion. *State v. King*, 432 S.W.3d 316, 325 (Tenn. 2014).

Judicial diversion is a form of probation that affords certain qualified defendants the opportunity to avoid a permanent criminal record. *See* T.C.A. § 40-35-313(a)(1)(A). If a defendant qualifies for judicial diversion, a trial court may defer proceedings without entering a judgment of guilty, placing the defendant on probation without categorizing the defendant as a convicted felon. *Id.* Upon successful completion of the probationary period, the trial court will dismiss the charges and the defendant may seek expungement of the record, which "restore[s] the person, in the contemplation of the law, to the status the person occupied before such arrest or indictment or information." *King*, 432 S.W.3d at 323 (quoting *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999)); *see* T.C.A. § 40-35-313(a)(2), (b). However, if the defendant violates the terms of his or her probation, "the court may enter an adjudication of guilt and proceed as otherwise provided." T.C.A. § 40-35-313(a)(2). "Judicial diversion is a form of 'legislative largess' available to qualified defendants who have entered a guilty or nolo contendere plea or have been found guilty of an offense without the entry of a judgment of guilt." *King*, 432 S.W.3d at 323.

A defendant is eligible for judicial diversion if he or she is found guilty or pleads guilty or nolo contendere to a Class C, D, or E felony, has not been previously convicted of a felony or Class A misdemeanor, has not been previously granted judicial or pretrial diversion, and is not seeking deferral for a sexual offense. *See* T.C.A. § 40-35-

313(a)(1)(B)(i). It is undisputed in this case that Defendant is eligible to be considered for judicial diversion because he pled guilty to sexual battery, a Class E felony. *Id.* Sexual battery is not one of the enumerated sexual offenses excluded from eligibility for diversion. *Id.* at (a)(1)(B)(ii) (listing sexual offenses that are not eligible for diversion). "Eligibility under the statute does not, however, constitute entitlement to judicial diversion; instead, the decision of whether to grant or deny judicial diversion is entrusted to the discretion of the trial court." *King*, 432 S.W.3d at 323. The trial court must consider several common law factors:

> "(a) The accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused."

*Id*. at 326 (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). "[T]he trial court must weigh the factors against each other and place an explanation of its ruling on the record." *Id*. (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

When the trial court considers the common law factors, "specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," then this Court will "apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id*. at 327. Our supreme court has explained:

> Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

*Id*. Failure to consider the common law factors results in a loss of the presumption of reasonableness, and this Court will either conduct a de novo review or remand the case to the trial court for reconsideration. *Id*.

A trial court can abuse its discretion not only by failing to consider all of the relevant factors, but also by giving undue consideration to an irrelevant factor. In the context of

pretrial diversion,[2] the supreme court has held that the prosecutor's consideration of and undue reliance upon an irrelevant factor constitutes an abuse of discretion. *State v. McKim*, 215 S.W.3d 781, 788 (Tenn. 2007) (holding that "[t]he prosecutor's consideration of, and emphasis upon, an irrelevant factor so tainted his decision-making process as to constitute an abuse of discretion"); *see also Stanton v. State*, 395 S.W.3d 676, 687 n.2 (Tenn. 2013). "[J]udicial diversion 'is to be imposed within the discretion of the trial court subject only to the *same constraints* applicable to prosecutors in applying pretrial diversion.'" *King*, 432 S.W.3d at 327 (quoting *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992)) (emphasis added in *King*); *see State v. Cutshaw*, 967 S.W.2d 332, 343 (Tenn. Crim. App. 1997) ("Tennessee courts have recognized the similarities between judicial diversion and pretrial diversion and, thus, have drawn heavily from the case law governing pretrial diversion to analyze cases involving judicial diversion."). If prosecutors can abuse their discretion by considering and placing undue weight upon an irrelevant factor in determining pretrial diversion, then it stands to reason that a trial court can likewise abuse its discretion in considering and placing undue weight upon an irrelevant factor in determining judicial diversion.

In this case, Defendant argues that the trial court failed to consider and explain how the factors weighed in favor of or against diversion and considered and placed undue weight on irrelevant factors, namely whether Defendant admitted guilt and whether the victim opposed diversion.

We have reviewed the record on appeal. We determine that the trial court explicitly referenced two of the common law factors enumerated in *Parker* and *Electroplating*— deterrence and the circumstances of the offense. However, in our view, the repeated references throughout the trial court's ruling about the fact that sexual battery was "wrong" were not about the circumstances of the offense but rather general statements about the crime of sexual battery. The legislature explicitly excluded several sexual offenses from eligibility for judicial diversion. However, sexual battery is not one of them. In addition to discussing displeasure with the offense itself, the trial court commented at length on the victim's feelings about diversion and on the effect of the offense on the victim. Neither of these are factors to be considered when granting or denying judicial diversion. In our view, the trial court considered at least one irrelevant factor that tainted the court's decision-making process such that the presumption of reasonableness standard is not appropriate. *See King*, 432 S.W.3d at 327. In some instances, we may attempt to conduct a de novo review of the record to determine whether Defendant should be granted judicial diversion.

---

[2] The difference between the two types of diversion is that judicial diversion follows a determination of guilt and the decision is made by the trial court, whereas pretrial diversion is a decision by the prosecutor to suspend prosecution for a certain period of time. *Compare* T.C.A. § 40-35-313 *with* T.C.A. § 40-15-105.

In determining whether this Court should conduct a de novo review or remand the case to the trial court for reconsideration, we must consider "the adequacy of the record, the fact-intensive nature of the inquiry, and the ability of [this] [C]ourt to request supplementation of the record." *King*, 432 S.W.3d at 328. As we will explain below, we believe the record in this case is not adequate for a de novo review.

The proof showed that Defendant has never previously received pretrial or judicial diversion and has no criminal record. Defendant's social history, however, is somewhat unclear. At fifty-one years old, Defendant used to drive a taxi in Chicago, volunteered at a local mosque, and delivered pizza for Dominos. He is married with one young child, though his wife and child were living in Texas at the time of the hearing. One former neighbor wrote a letter attesting to his character. Defendant suffers from depression but does not regularly take his antidepressant medication. Defendant attempted to introduce additional evidence with regard to his social and family history, but the trial court stopped defense counsel, instructing him that the only important information was whether Defendant committed the act and if he was "remorseful in any way whatsoever." The trial court deemed social and family history information "totally off" base with regard to a determination on diversion.

As to the circumstances of the offense, the proof was that Defendant acknowledged that he committed the offense and that it was wrong. However, the trial court denied Defendant the opportunity to introduce a video of the offense, even when defense counsel asked to make an offer of proof after the trial court denied diversion. We acknowledge that the proof indicated the victim was traumatized by the incident and attended therapy afterward.

As to the deterrence value to Defendant and others, as well as whether diversion will serve the public interest, the trial court "based" the decision on the fact that "these types of acts" are "wrong." We agree that we should, in general, seek to avoid depreciating the seriousness of the offense; however, we disagree that judicial diversion serves as condonation of behavior that violates the law. When a defendant is granted judicial diversion, he or she is placed on probation and must comply with all manner of probation conditions, including supervision by a probation officer. Only when the defendant successfully completes probation will the charges be dismissed and the defendant can seek to have his or her record expunged. T.C.A. § 40-35-313(a)(2). If the defendant violates the terms of probation, the trial court can "enter an adjudication of guilt and proceed as otherwise provided." *Id.* Judicial diversion is not a lack of consequences for one's actions, but a one-time opportunity for certain defendants to avoid a permanent criminal record. When properly applied, the law of diversion demands that anyone who squanders the opportunity by violating the conditions of probation, will be held accountable.

In our view, the trial court improperly considered irrelevant factors and did not base its decision to deny diversion on the application of the common law *Parker* and *Electroplating* factors. The trial court abruptly ended Defendant's testimony about his social, mental and physical history, all factors that should have been considered by the trial court in determining whether to grant or deny diversion. Thus, the record is inadequate for a de novo review by this Court. On remand, the trial court should hold a hearing at which Defendant is able to enter evidence about each of the common law factors. However, whether the trial court ultimately decides to apply merely some or all of those factors, is a matter left to the trial court's discretion so long as the trial court does not consider irrelevant factors.

## Conclusion

Based on the foregoing and the record as a whole, we reverse the trial court's judgment denying judicial diversion and remand the case to the trial court for further proceedings consistent with this opinion.

_____
TIMOTHY L. EASTER, JUDGE