IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 8, 2021

## STATE OF TENNESSEE v. MEREDITH MUSE THOMPSON

**Appeal from the Criminal Court for Davidson County**
**No. 2019-C-1948    Cheryl Blackburn, Judge**

_____

### No. M2020-01046-CCA-R3-CD
_____

The Defendant, Meredith Muse Thompson, pleaded guilty in the Davidson County Criminal Court to making a false police report, a Class D felony. *See* T.C.A. § 39-16-502 (2018). The trial court sentenced the Defendant to two years' probation. On appeal, the Defendant contends that the trial court erred by denying her request for judicial diversion. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JILL BARTEE AYERS, J., joined.

David Von Wiegandt, Nashville, Tennessee, for the appellant, Meredith Muse Thompson.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Glenn Funk, District Attorney General; Gracie Moore and Megan King, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Defendant's conviction relates to her report of a domestic abuse incident involving her former husband on March 27, 2018, and her subsequent testimony during a civil court proceeding in which she stated that her allegation against her former husband had been false. In July 2019, the Defendant was indicted for making a false police report in connection with the March 27, 2018 allegation. On February 20, 2020, she pleaded guilty in exchange for a two-year sentence. Pursuant to the plea agreement, the trial court would consider the Defendant's request for judicial diversion.

At the guilty plea hearing, the State's recitation of the facts was as follows:

[O]n March 27th, 2018, Detective Christopher Williams responded to Centennial Hospital in response to a domestic incident between the defendant and her exhusband Steven Wilkins. According to the defendant, Mr. Wilkins came in her residence and they began arguing over parenting issues, and that during the argument she reported to the police that Mr. Wilkins produced a sharp object and stabbed her several times in the abdomen before fleeing the scene on foot. Through the course of Detective Williams' investigation, he did not find sufficient probable cause to prosecute Mr. Wilkins based on the defendant's statement.

On February 21st, 2019, there was a civil court proceeding involving Mr. Wilkins and the defendant in which Detective Williams was present. During the proceedings, the defendant had stated under oath that she falsely accused Mr. Wilkins of stabbing her and that she had filed a false police report.

At the sentencing hearing, the presentence report was received as an exhibit. The report reflects that the thirty-eight-year-old Defendant had no previous convictions. However, she had been charged with failure to appear and attempt to violate an order of protection in 2015. The report did not reflect a resolution of these matters. The report likewise reflected a pending assault charge in Tuscaloosa, Alabama.

The presentence report reflected that the Defendant attended the University of Tennessee and obtained a court reporting certificate. She reported working full time as a freelance court reporter, working intermittently at an Alabama restaurant, and generally earning approximately $800 per month. The Defendant had not seen her seven-year-old son "in years" because of the present offense. The Defendant reported paying child support but being "backed up" on her payments. She stated that she lived in Alabama with her mother and stepfather, who were positive influences.

The presentence report reflects that the Defendant first reported drinking alcohol at age sixteen or seventeen and that she did not have addiction issues. The Defendant admitted, though, that she had been drinking at the time of the present offense and that the alcohol and her mental state might have impacted her conduct. The Defendant reported that she was diagnosed with Bipolar Disorder II and anxiety in February 2019 and that she received outpatient counseling every two months and took prescription medication. The Defendant admitted smoking marijuana in college. The report reflects that the Strong-R Assessment rated the Defendant as having a low risk for recidivism.

A certified copy of a September 19, 2018 indictment from Alabama charging the Defendant with domestic violence assault in the second degree was received as an exhibit. The indictment alleged that the Defendant had used a stereo, clay statue, and/or rubber mallet during the assault of her father. Likewise, an Alabama "SJIS Display" from the circuit court was received as an exhibit. Although the contents were not explained at the sentencing hearing, other evidence shows that the Alabama assault charge had not been resolved.

Steven Wilkins, the Defendant's former husband, testified that his and the Defendant's divorce was finalized in 2014. He said that afterward, the Defendant engaged in "substantial harassment." He said that the Defendant lost custody of their son after a Davidson County Circuit Court judge determined that the Defendant had "perjured herself" by filing a false police report and obtaining an order of protection against him in the Spring of 2017. Mr. Wilkins said that the circuit court judge issued a restraining order against the Defendant but that the judge gave her the opportunity "to get her parenting time back" after thirty days. Mr. Wilkins said that the next year was "calm" but that one morning, a detective came to his office and questioned him about an allegation that he stabbed the Defendant. Mr. Wilkins believed there was a high likelihood "this" would happen in the future.

Mr. Wilkins identified certified copies of the Davidson County Fourth Circuit Court orders entered in 2017 and 2018, which were received as an exhibit. An Order to Enter a Restraining Order was entered on June 29, 2017. The order reflects that the Defendant invoked her Fifth Amendment privilege against self-incrimination regarding the allegations contained in the petition for an order of protection she filed on May 18, 2017. The order reflects that three witnesses, including Mr. Wilkins, testified that the events alleged in the petition did not occur and that the court determined the Defendant had committed perjury in her petition for an order of protection. The court found that the Defendant had attempted to "alienate the affections" of her son, and the court limited her interaction with her son to two phone calls per week. The order reflects that the court would address a motion to resume supervised visits after thirty days.

A second order entered on November 29, 2018, reflects that the Defendant failed to appear in the Davidson County Fourth Circuit Court on November 2, 2018. The order reflects that based upon affidavits submitted to the court, Mr. Wilkins's testimony, and the court's previous finding that the Defendant had committed perjury in her petition for an order of protection, the court determined the Defendant "was not worthy of belief in a court of law," and that she "will allege anything to get her way, including faking domestic assault charges and false stabbing reports." The order reflects that the Defendant's contact with her son was "suspended in its entirety."

Mr. Wilkins testified that their son was age seven. Mr. Wilkins said that the Defendant had caused "major disruptions" in his family's lives. He explained these incidents had been costly in time and expense. He explained that contempt charges were pending against the Defendant in civil court, that one charge pertained to the Defendant's false statement against him in connection with the present criminal case, and that two additional contempt charges stemmed from the Defendant's calling his attorney's office, posing as his current wife, and accusing him of raping the Defendant. Mr. Wilkins said that he, his wife, and all of their children had obtained orders of protection against the Defendant. Mr. Wilkins said that he was "less concerned" about how the Defendant served her sentence in the present case but that he opposed judicial diversion because he feared the Defendant was likely to continue engaging in similar conduct. He believed that the detective who investigated the present case would have arrested him if he had not provided the court orders from the civil court proceedings.

On cross-examination, Mr. Wilkins testified that the Defendant was arrested about one month after she filed the false police report. He agreed the contempt proceedings were related to incidents occurring before the present offense. He said that although the Defendant had not lost her parental rights permanently, she had no right to parent at the time of the sentencing hearing. He agreed that he was not taken to jail, that the Defendant had not violated the order of protection, and that the Defendant admitted she had lied when she accused him of stabbing her.

Upon questioning by the trial court, Mr. Wilkins testified that the Defendant had not attempted to contact him or his family since her arrest in this case. He said that after the Defendant called his attorney's office posing as his current wife, his attorney called him to confirm the caller had not been his wife. Mr. Wilkins said that his attorney subpoenaed telephone records, which showed the Defendant had called his attorney's office seventeen times that morning. He thought this occurred after the detective questioned him about the present case.

The Defendant testified that the failure to appear in the civil court proceedings occurred when she struck a deer with her car in Alabama while en route to attend court in Tennessee. She said that she immediately sent an email to her attorney, who responded he would inform the court. She said that her attorney told her the court wanted photographs and an accident report, that she did not complete an accident report, and that she understood Alabama did not require the completion of an accident report because she only had liability insurance.

The email exchanges between the Defendant and her attorney were received as an exhibit. On December 19, 2019, at 7:46 a.m., the Defendant sent an email stating that she struck a deer while en route to Nashville from Alabama, that the vehicle was a total loss, that she was in Alabama and did not know what to do, and that she would not appear in

court. The Defendant requested that her attorney explain the circumstances to the court. The attorney responded at 8:44 a.m. and stated that he would inform the judge and asked if she sustained any injuries. The Defendant responded fifteen minutes later that she was fine other than some back pain. At 9:20 a.m., the attorney responded that the judge wanted photographs and a police or incident report by 9:00 a.m. the next day and that the judge would issue a "body attachment" for the Defendant with an open court bond if she did not comply. The attorney urged her to comply. At 2:38 p.m., the Defendant sent a photograph, which was of poor quality, and stated that she did not file a police report because she only had liability insurance.

The Defendant testified that although the photograph she sent to her attorney was unclear, it depicted the "whole front side of the driver's side and the middle was completely impacted." She agreed she was charged with failure to appear.

The Defendant testified that she had not contacted Mr. Wilkins since her arrest in the present case in April 2019. She denied she had violated the order of protection. When asked to explain why she lied and about her state of mind, she stated that the divorce had been difficult and challenging and that child custody had "dragged on" for years. She said she and Mr. Wilkins had a tumultuous relationship and that she had been emotionally and physically abused previously, although she did not file "reports." She said that she was told she would not be believed unless she filed a report. She said that "[m]any factors" led to her making a false report and that she was ashamed and embarrassed. She said that she knew it was wrong at the time she made the false report and that she told the truth in the civil court proceedings because she knew it was wrong.

The Defendant testified that on the night of the present offense, she called a "crisis line," not the police, and that the police came to her home as a result of her call. A copy of the incident report in which she alleged Mr. Wilkins had assaulted her was received as an exhibit. The report reflects that on March 27, 2018, the Defendant was the victim of an aggravated assault with a deadly weapon and that the suspect was Mr. Wilkins. The report reflects that police officers went to the Defendant's home based upon her report to the crisis line that Mr. Wilkins stabbed her. The report reflects that the Defendant told the crisis line she was fine and that it was "stupid of her to call" and that the Defendant sounded stressed at times and not stressed at times during the call. The report reflects that the Defendant had minor lacerations "to the outside of the groin on both sides" when the police arrived, that she was taken to the hospital in an ambulance, that the ambulance had to stop because the Defendant became disorderly, and that the Defendant became upset, left the ambulance, and refused medical assistance. The report reflects that after the Defendant was returned to her home by paramedics, she changed her mind and wanted medical treatment, and the police officers drove her to the hospital. The police officers noted that the Defendant smelled of alcohol and that they could not find evidence of a crime scene inside the home

or a weapon inside the home. At the hospital, the Defendant reported an altercation about child custody and said that Mr. Wilkins stabbed her with an unknown object.

The affidavit for the arrest warrant was completed by Detective Christopher Williams and was received as an exhibit. In addition to the information provided in the incident report, the affidavit reflects that after interviewing the Defendant, Detective Williams concluded that there was insufficient probable cause to arrest Mr. Wilkins because of the Defendant's inconsistent statements and because Mr. Wilkins's wife provided an alibi. The affidavit reflects that on February, 21, 2019, the detective attended the Defendant and Mr. Wilkins's civil court proceedings and observed the Defendant testify that she had lied about the stabbing allegation.

The Defendant testified that she pleaded guilty to making a false report because she wanted to take responsibility for what she had done. She agreed she had drank alcohol on the night of the offense and that she used a sharp object to make it look as though she had been stabbed.

The Defendant testified that she last saw her son in May 2017, that she wanted custody of her son, and that she was working to regain custody. She said that she lived in Minter, Alabama, with her family and that she intended to stay there for a while but not forever. She said that she worked at a restaurant and worked as a court reporter since completing school in 2013. She said that she had been diagnosed with Bipolar Disorder II by her current psychiatrist in Alabama. She said that she began treatment and prescription medication in February 2019, that she met with her psychiatrist twice per month, and that she attended additional therapy sessions. The Defendant stated that she wanted to apologize to Mr. Wilkins, their son, and Mr. Wilkins's family. She said that "nothing like this will ever happen again, absolutely not."

On cross-examination, the Defendant testified that she failed to appear twice in the civil court proceedings and acknowledged that there were pending contempt of court charges against her. She said, though, that she had been following the civil court's orders because she had not contacted Mr. Wilkins and his family since "any filings" and that she was unaware if she had violated any conditions set by the civil court.

The Defendant testified that she spoke with the probation officer five minutes after the scheduled time to answer the presentence investigation questionnaire. However, an email from probation officer Tonya Gourley to defense counsel reflected that the Defendant had missed her scheduled FaceTime call to be interviewed for the presentence investigation, although Ms. Gourley had called the Defendant twice. The email reflects that Ms. Gourley would be unable to meet with the Defendant until the following week and that Ms. Gourley had received the Defendant's "packet" from defense counsel. The

Defendant said she was interviewed by Ms. Gourley, although she acknowledged the sentencing hearing had to be delayed.

The Defendant testified that the trial court should believe her testimony because she had worked hard throughout this process, although she had failed several times. She said that she continued to "get back up." She admitted wrongdoing in this case and said she did not want the incident to define her. She said that she led a good life and that she wanted to show she could tell the truth regardless of whether it benefited or harmed her. She said that she never wanted to repeat her conduct. When asked why she allowed the incident to escalate to a false allegation against Mr. Wilkins, she said she admitted lying the first time she testified in the civil court proceedings.

On redirect examination, the Defendant testified she could comply with any mental health treatment ordered by the trial court.

Upon examination by the trial court, the Defendant testified that the pending contempt of court charges in the civil court proceedings were related to her placing phone calls to Mr. Wilkins's office. She said that she had failed to appear twice in the civil court proceedings. She said that one failure to appear related to a 2017 court date of which she had been unaware and that the second allegation was related to her striking a deer with her car when she was en route to court from Alabama. She said that the civil court judge had her placed in jail after she failed to appear when she struck the deer with her car. She understood the judge placed her in jail because she did not obtain an accident report, although she provided the photograph.

The trial court ordered the Defendant to serve her two-year sentence on probation and denied her request for judicial diversion. In making its determinations, the court stated that it considered the evidence at the sentencing hearing, the presentence report, arguments of counsel, the principles of sentencing, the nature and characteristics of the offenses, mitigation and enhancement factors, the Defendant's potential for rehabilitation and treatment, statistical information, and the risks and needs assessment.

Relative to mitigation evidence, the trial court applied factor (1) because the Defendant's conduct "neither caused nor threatened serious bodily injury." *See* T.C.A. § 40-35-113(1) (2019). The court found, though, that the Defendant's conduct resulted in serious mental anguish for Mr. Wilkins.

The trial court applied enhancement factor (1) after determining that the Defendant had committed perjury in the civil court proceedings, although she had not been charged with perjury. *See id.* § 40-35-114(1) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]").

-7-

In considering judicial diversion, the trial court considered the Defendant's amenability to correction, the circumstances of the offense, the Defendant's criminal history, the Defendant's social history, the Defendant's physical and mental health, the deterrence value to the accused and to others, whether judicial diversion will serve the interests of the Defendant and the public, and the Defendant's attitude, behavior since her arrest, home environment, drug use, emotional stability, past employment, general reputation, family responsibility, and "the attitude for law enforcement."

The trial court found that there was "clearly a problem" with the Defendant's amenability to correction. The court found that the Defendant's criminal proceedings in Alabama were still pending at the time of the sentencing hearing. The court found that the evidence showed that the Defendant lacked the ability to follow court orders in the civil court proceedings and that she had repeatedly violated the civil court judge's orders by failing to appear. The court found, as well, that the Defendant had difficulty following the order of the court in connection with completing the presentence investigation with the probation officer. The court found that the Defendant's harassment of Mr. Wilkins due to her calling his attorney, pretending to be Mr. Wilkins's wife, and accusing Mr. Wilkins of rape rendered "these offenses worse than others." The court credited the evidence of the Defendant's "mental health issues." Relative to specific and general deterrence, the court stated that the time had come for the Defendant to take responsibility for her actions. As a result, the court declined to grant the Defendant's request for judicial diversion based upon the Defendant's inability to rehabilitate. However, the trial court ordered the Defendant to serve her sentence on probation. The court ordered her to continue her mental health treatment and not to contact Mr. Wilkins and his family. The court permitted a transfer of her supervision to Alabama. This appeal followed.

The Defendant contends that the trial court erred by denying her request for judicial diversion. She argues that the court erred by relying on deterrence and by considering perjury as grounds for denying diversion. The State responds that the denial of diversion is supported by the record.

A trial court may order judicial diversion for certain qualified defendants who are found guilty of or plead guilty or nolo contendere to a Class C, D, or E felony or a lesser crime; have not previously been convicted of a felony or a Class A misdemeanor; and are not seeking deferral for a sexual offense. *See* T.C.A. § 40-35-313(a)(1)(B)(i) (Supp. 2017) (subsequently amended). The grant or denial of judicial diversion is within the discretion of the trial court. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (citing T.C.A. § 40-35-313(a)(1)(A)). When considering whether to grant judicial diversion, a trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, (6) the deterrence value to the defendant and others, and (7) whether judicial diversion will serve the ends of justice. *State v. Electroplating*, *Inc.*, 990

S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); *see King*, 432 S.W.3d at 326 (stating that recent caselaw affecting the standard of review for sentencing determinations "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion"). "The record must reflect that the court has weighed all of the factors in reaching its determination." *Electroplating*, 990 S.W.2d at 229. If a trial court refuses to grant judicial diversion, "[T]he court should clearly articulate and place in the record the specific reasons for its determinations." *Parker*, 932 S.W.2d at 958-59. "The truthfulness of a defendant, or lack thereof, is a permissible factor for a trial judge to consider in ruling on a petition for suspended sentence." *State v. Neeley*, 678 S.W.2d 48, 49 (Tenn. 1984).

On review of a decision to grant or deny judicial diversion, this court will apply a presumption of reasonableness if the record reflects that the trial court considered the *Parker* and *Electroplating* factors, specifically identified the relevant factors, and placed on the record the reasons for granting or denying judicial diversion, provided any substantial evidence exists to support the court's decision. *King*, 432 S.W.3d at 327. If, however, the trial court failed to weigh and consider the relevant factors, this court may conduct a de novo review or remand the case for reconsideration. *Id*. at 328.

Likewise, a trial court's reliance upon an irrelevant factor may result in an abuse of discretion. *See State v. McKim*, 215 S.W.3d 781, 787 (Tenn. 2007). However, a court's mere consideration of an irrelevant factor does not result in an abuse of discretion because "it is the undue consideration of an irrelevant factor that is prohibited." *Stanton v. State*, 395 S.W.3d 676, 687 n.2, 691 (Tenn. 2013). A "trial court is not required to recite on the record all of the . . . factors; however, the record should reflect that the trial court considered all of the factors in rendering its decision that it 'identified the specific factors applicable to the case before it.'" *State v. Dycus*, 456 S.W.3d 918, 930 (Tenn. 2015) (quoting *King*, 432 S.W.3d at 327.).

The record reflects that in denying the Defendant's request for judicial diversion, the trial court considered the appropriate factors pursuant to *Parker and Electroplating* and placed on the record its reasons for denying diversion. *Parker*, 932 S.W.2d at 958; *Electroplating*, 990 S.W.2d at 229. *King*, 432 S.W.3d at 327.

The trial court's primary basis for denying the Defendant's request for judicial diversion was her inability to rehabilitate. The record reflects that the Defendant and Mr. Wilkins divorced in 2014 but that child custody matters persisted in the civil court proceedings. Prior to the Defendant's filing a false police report accusing Mr. Wilkins of stabbing her, the Defendant invoked her Fifth Amendment privilege against self-incrimination when questioned during a civil court proceeding about the veracity of the allegations contained in a petition for an order of protection she filed on May 18, 2017. As a result, the civil court granted Mr. Wilkins a restraining order on June 6, 2017, and

determined that the Defendant had committed perjury in her petition for an order of protection. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999) ("Lack of candor and credibility are indications of a defendant's potential for rehabilitation.")

The present offense occurred on March 27, 2018, and the Defendant was arrested in April 2018. However, the Defendant was indicted for assaulting her father during an incident occurring on August 21, 2018, although the charge had not been resolved at the time of the sentencing hearing. Two months later, the Defendant failed to appear in the civil court proceedings on November 2, 2018, and the civil court entered an order finding that the Defendant was not "worthy of belief in a court of law." The record does not reflect the reason the Defendant failed to appear on this date. In any event, on February 21, 2019, the Defendant admitted during her testimony in the civil court proceedings that she had filed a false police report accusing Mr. Wilkins of aggravated assault. Ten months later, on December 19, 2019, the Defendant failed to appear again in the civil court proceedings. The Defendant's testimony and the email exchanged with her attorney reflect that the Defendant struck a deer with her car as she drove from Alabama to Tennessee for court proceedings. Although the Defendant submitted a photograph of the car after the incident, she did not present an incident report as ordered by the civil court and served time in jail for failing to appear. Additionally, the Defendant testified that she had failed to appear on a third occasion sometime in 2017 because she had been unaware of the scheduled appearance.

The record likewise reflects that contempt of court charges were pending in the civil court at the time of the sentencing hearing, although the record is unclear relative to the number of allegations. Mr. Wilkins testified that one contempt allegation was related to the Defendant's filing the false police report accusing him of assaulting her and that two contempt allegations were connected to the Defendant's calling Mr. Wilkins's attorney's office, pretending to be Mr. Wilkins's wife, and accusing Mr. Wilkins of raping the Defendant. Mr. Wilkins testified that he thought this occurred after the detective questioned him about the present case.

The record likewise reflects that the Defendant had failed to attend the scheduled FaceTime appointment with the presentence investigator in order to complete the presentence report. The missed appointment resulted in a delay of the June 16, 2020 sentencing hearing. The court continued the sentencing hearing to July 14, 2020, but the Defendant arrived late, requiring an additional continuance. As a result, the Defendant's conduct supports the trial court's determination that the Defendant had not demonstrated an amenability to correction.

Relative to the circumstances of the offense, the trial court determined that although the offense did not result in serious bodily injury to Mr. Wilkins, the Defendant's conduct had resulted in serious mental anguish and had been connected to the extended harassment

-10-

of Mr. Wilkins. The record reflects that the Defendant and Mr. Wilkins has been involved in an extended custody battle and that the Defendant had previously lied in a petition for an order of protection against Mr. Wilkins. Furthermore, the Defendant had contacted Mr. Wilkins' attorney pretending to be Mr. Wilkins's wife and accusing Mr. Wilkins of rape. The Defendant admitted at the sentencing hearing that she had likewise contacted Mr. Wilkins's office at some point, violating the restraining order. Mr. Wilkins testified that the Defendant's conduct in the present case had been financially burdensome and time consuming and that his entire family was under the protection of a restraining order. The record supports the court's determinations.

The record reflects that although the Defendant did not have any previous criminal convictions, she had a pending assault charge in Alabama and had been found by the civil court to have committed perjury in her petition for an order of protection, although she had not been prosecuted for perjury. The Defendant's social history viewed in light of her mental health struggles with Bipolar Disorder and anxiety, supports the trial court's determinations.

The record reflects that the trial court determined that deterrence weighed against granting the Defendant's request for judicial diversion, as well. The court determined, based upon the Defendant's history of harassing behavior, that the Defendant needed to take responsibility for her conduct. As a result, the court's focus was upon specific deterrence of the Defendant. Although the court referred to general deterrence, the record does not reflect any consideration by the court that similar crimes were being committed in the community and that denying diversion would rationally deter others from committing similar crimes. *See State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000). Likewise, Mr. Wilkins's fear that the Defendant's harassment would continue, based upon her parttern of behavior, if she received judicial diversion supports the trial court's determination that diversion would not serve the ends of justice.

The record reflects that the trial court considered the appropriate factors and the facts of the case. The court's findings are supported by the record. Upon review, we conclude that the Defendant has not shown an abuse of discretion. The court did not err in denying judicial diversion.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE

-11-